[No. 62473-9. En Banc.]
Argued September 21, 1995. Decided May 9, 1996.
THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL W. HENDRICKSON, *Petitioner*.

62

*Lisa Dworkin (appointed counsel for appeal)* and *Michael W. Hendrickson,* pro se, for petitioner.

*Frederick A. Johnson, Prosecuting Attorney*, for respondent.

TALMADGE J. — Michael Hendrickson, who was on work release, was arrested for selling cocaine to a fellow inmate at a location frequented by Wahkiakum County Jail inmates. Hendrickson's truck was impounded. Several days later, acting on an anonymous tip, police conducted a warrantless search of the truck and found cocaine in the vent of an audio speaker.

We are asked in this case to determine if a warrantless search of an impounded vehicle based on an anonymous tip violated Hendrickson's constitutional rights. We are also asked to determine if Hendrickson was denied effective assistance of counsel and whether a defendant's enhanced sentence for a drug transaction occurring in a jail facility meets the terms of the statute and complies with constitutional standards.

We affirm Hendrickson's conviction and enhanced sentence for delivery of cocaine in a jail facility. But we hold that the warrantless search of his truck was improper and reverse the Court of Appeals, remanding the case to the trial court for further proceedings consistent with this opinion on the charge of possession with intent to deliver.

## ISSUES

1. Should the trial court have suppressed the evidence recovered during the warrantless search of Hendrickson's truck?

2. Did Hendrickson's trial counsel's failure to object to the presentation of evidence of his prior drug convictions deny Hendrickson his right to effective assistance of counsel?

3. Was Hendrickson's enhanced sentence for delivering drugs in a jail under RCW 9.94A.310(4) proper?

## FACTS

Petitioner Michael W. Hendrickson was an inmate of the Wahkiakum County Jail in February 1992, serving a sentence for manufacturing marijuana. He was then participating in the work release program. When not in jail, he worked in a shop adjacent to his home in Cathlamet five days a week. While on work release, Hendrickson used his 1966 Ford pickup truck to commute between his shop and the Wahkiakum County Jail.

In order to participate in the work release program, Hendrickson was required to execute a document entitled Wahkiakum County Rules for Work Release Program. He executed the document on October 29, 1991, in the presence of a witness, Wahkiakum County Chief Deputy Sheriff Dan L. Bardsley. Bardsley testified that he and Hendrickson signed the document. Bardsley also testified that he both discussed the rules with Hendrickson and read them to him on the day Hendrickson signed the doc-

ument. Hendrickson had no questions and stated he understood the rules. The key provisions of the work release rules are the following:

> 5. All releasees are subject to search of their person and possessions prior to entering or leaving the Work Release Facility. You will check in and out through the jailer on duty or the designated individual responsible.

> 6. All releasees are subject to legally accepted chemical and physiological tests for determination of alcohol and/or drug consumption. Also releasees are subject to search of their person, personal possessions, vehicles used in going to and from work, and any area used or controlled by work release, at any time deemed necessary by the work release director.

Clerk's Papers at 12.

Some time in early February 1992, Hendrickson offered to sell cocaine to fellow inmate Allen Pierce, according to Pierce's testimony. Pierce informed law enforcement personnel of Hendrickson's proposal. He agreed to participate in a controlled buy in return for release from jail and a bus ticket home. Hendrickson told Pierce he would package the cocaine and leave it under the ash can just outside the Wahkiakum County Courthouse where prisoners routinely went for smoking breaks.

On February 15, 1992, Hendrickson returned to the jail after a day of work at his home workshop. He told Pierce he had left the cocaine under the ash can as planned, and Pierce gave him the buy money, which the police had photocopied. Two deputies took Pierce outside to the inmates' smoking area and retrieved a packet of cocaine from under the ash can. The deputies then searched Hendrickson and found in his pants pocket the $100 of U.S. currency they had previously photocopied and given to Pierce. The Wahkiakum County Sheriff's office then requested that agents of the Cowlitz-Wahkiakum Narcotics Task Force come to the jail to take Hendrickson into custody.

Two detectives from the Task Force came to Cathlamet,

and informed Hendrickson that he was under arrest for delivering cocaine. The detectives advised him they were seizing his truck because it had been used to transport the cocaine to the jail. The detectives then performed a brief, warrantless, inventory search of the truck, but found nothing of interest. They seized the truck and it remained in the custody of the Wahkiakum County Sheriff, parked in the parking lot of the jail.

Hendrickson was transferred from the Wahkiakum County Jail to the Cowlitz County Jail that same evening. Although no official action occurred to terminate Hendrickson's participation in the work release program, he was not allowed to travel to his job site after his arrest on February 15. The trial court subsequently found he was not on work release after February 15.

Some time after Hendrickson's arrest on February 15 (the record is silent as to when), the Wahkiakum County Sheriff's office received a tip from an anonymous informant that an additional package of cocaine was hidden inside a speaker vent in Hendrickson's truck. Because of this tip, and in reliance on Hendrickson's signed consent for search of his vehicle, two deputies conducted a warrantless search of the truck on February 19, 1992, in the parking lot of the jail. The truck was not in an impound yard. They located one-half ounce of cocaine, packaged the same way as the cocaine Hendrickson had delivered to the jail smoking area on February 15. They also located a film canister covered in camouflage fabric. The items recovered from the truck's speaker vent were not readily visible to the deputies. They were able to find them only because of the tip.

Based on the evidence seized from Hendrickson's truck, officers obtained a warrant the very next day to search the home workshop Hendrickson used during the work release program. Officers conducted the search on February 20. The search revealed no additional drugs, but yielded a piece of clothing from which Hendrickson's cocaine packaging material could have been cut, and some

camouflage print fabric identical to the fabric found on the film canister in Hendrickson's truck.

Hendrickson was charged by amended information with a count of delivering a controlled substance, stemming from his actions on February 15, 1992, and a second count for possessing a controlled substance with intent to deliver, based on the discovery of the cocaine in his truck on February 19, 1992. The delivery charge was subject to a sentence enhancement under RCW 9.94A.310(5) because delivery was made in a county jail. The charges were subject to an additional enhancement because of Hendrickson's prior drug-related convictions.

Hendrickson moved before trial to suppress the evidence gathered on February 19 and subsequently, claiming the search of his truck violated his privacy rights under both the state and federal constitutions. The trial court denied the motion, and made findings of fact and conclusions of law. Neither the State nor Hendrickson has assigned error to any of the trial court's findings of fact.

During his jury trial, Hendrickson testified on his own behalf, and denied everything. His basic defense was that Pierce had set him up in order to obtain his own release. During the presentation of the State's case, before Hendrickson testified, the State introduced into evidence the "Judgment and Sentence" documents from Hendrickson's January 1990 conviction for possession of methamphetamine and his October 1991 conviction for manufacturing marijuana. Hendrickson's trial counsel did not object to the admission of those documents into evidence.

Hendrickson was found guilty on both the delivery and possession charges. By special verdict, the jury found that the delivery had occurred within a county jail, and that Hendrickson had prior drug-related convictions. Hendrickson's trial counsel did not object to allowing the jury to consider Hendrickson's prior drug convictions in the special verdict. The trial court sentenced him to a term of 110 months on the delivery charge and 102 months on the possession charge, including enhancements, with the sentences to run concurrently.

Hendrickson appealed, assigning error to: the trial court's failure to suppress evidence of the cocaine found in his truck, his trial counsel's failure to object to the introduction of his prior drug-related convictions, thereby denying him effective assistance of counsel, and the trial court's imposition of a sentence enhancement under RCW 9.94A.310(5). The Court of Appeals, in an unpublished opinion, rejected all of Hendrickson's contentions, and affirmed the sentence. Hendrickson sought review of all the issues before the Court of Appeals, and we accepted review.

## ANALYSIS

### A. THE WARRANTLESS SEARCH

The police here conducted a warrantless search of Hendrickson's truck four days after his arrest for delivery of cocaine in the county jail, and four days after his truck had been seized pursuant to civil forfeiture procedures. The search resulted in the discovery of cocaine hidden in the speaker vent of the vehicle. Hendrickson was charged with possession with intent to deliver, a new and separate crime from the one for which he was arrested on February 15. Hendrickson challenges the constitutional propriety of the warrantless search, and of his subsequent conviction based on evidence discovered during that search.

As Hendrickson has claimed a violation of his rights under both the Fourth Amendment to the United States Constitution and art. I, § 7 of the Washington Constitution, we will first analyze the alleged violation of the Washington Constitution.[1] *State v. Johnson*, 128 Wn.2d

---

[1]Hendrickson did not argue for the application of art. I, § 7, either in the trial court or the Court of Appeals. The Court of Appeals did not address Washington constitutional issues, either. Hendrickson argued for the application of the Washington Constitution for the first time in his Supplemental Br. of Pet'r at 9-12. On at least two occasions, this court has rejected issues raised for the first time in supplemental briefs: *State v. Collins*, 121 Wn.2d 168, 179, 847 P.2d 919 (1993) (not appropriate to consider an issue raised for the first time in

431, 909 P.2d 293 (1996); *State v. Young*, 123 Wn.2d 173, 178-79, 867 P.2d 593 (1994); *State v. Coe*, 101 Wn.2d 364, 373-74, 679 P.2d 353 (1984).

■ Our analysis of art. I, § 7 of the Washington Constitution begins with the proposition that warrantless searches are unreasonable per se. In *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980), we said:

> As a general rule, warrantless searches and seizures are per se unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Nonetheless, there are a few " 'jealously and carefully drawn' exceptions" to the warrant requirement which "provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers of the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Arkansas v. Sanders*, 442 U.S. 753, 759, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979). *See Jones v. United States*, 357 U.S. 493, 499, 2 L. Ed. 2d 1514, 78 S. Ct. 1253 (1958). The burden is on the prosecutor to show that a warrantless search or seizure falls within one of these exceptions.

(Footnotes omitted.) We first cited the per se unreasonable

---

a supplemental brief after review has been accepted); *Douglas v. Freeman*, 117 Wn.2d 242, 257-58, 814 P.2d 1160 (1991) (issue not raised in Court of Appeals or in answer to petition for review would not be heard after having been raised for first time in supplemental brief).

Here, however, the issue is not new; only the argument involving the Washington Constitution's application to the facts of this case is new. Moreover, Hendrickson analyzed art. I, § 7 in his supplemental brief in light of the six nonexclusive factors set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). We have frequently held that art. I, § 7 affords more protection to individuals from searches and seizures by government than the Fourth Amendment to the United States Constitution. *See, e.g., State v. Carter*, 127 Wn.2d 836, 847, 904 P.2d 290 (1995) (citing cases). In particular, it is well settled that art. I, § 7 provides greater protection against warrantless searches of automobiles than the Fourth Amendment. *State v. Johnson*, 128 Wn.2d 431, 447, 909 P.2d 293 (1996); *State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989); *State v. Patterson*, 112 Wn.2d 731, 774 P.2d 10 (1989); *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986). Thus, in this case, another challenge to the warrantless search of an automobile, our inquiry is not whether art. I, § 7 provides more protection than the Fourth Amendment. Rather, our inquiry is whether the scope of that protection encompasses the facts of this case.

The State has not objected to the presentation of this argument in the Supplemental Br. of Pet'r. Nor has the State requested leave to respond to these new arguments. There is, therefore, no compelling reason for this court not to consider Hendrickson's state constitutional arguments.

rule with approval in *State v. Murray*, 84 Wn.2d 527, 533, 527 P.2d 1303 (1974) (reversing conviction because "plain view" exception to warrantless seizure rule did not apply), *cert. denied*, 421 U.S. 1004 (1975), and we have frequently recognized this principle in our jurisprudence under art. I, § 7. *State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419 (1984). *See also State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983) (analysis of historical context of art. I, § 7), *overruled by State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986). There are, however, exceptions to the rule.

The exceptions to the requirement of a warrant have fallen into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and *Terry* investigative stops. *See generally* Robert F. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. PUGET SOUND L. REV. 411, 528-80 (1988). The burden rests with the State to prove the presence of one of these narrow exceptions. *Johnson*, 128 Wn.2d at 447. At one point or another in this case, the State has argued several of the exceptions apply.

■■ The State first argues that Hendrickson had a diminished expectation of privacy in his vehicle because he was on the work release program at the time of the warrantless search. The State's contention is misplaced. Hendrickson's expectation of privacy, even if reduced, and we do not hold that it was, does not constitute an exception to the requirement of a warrant under art. I, § 7. Moreover, the trial court at the suppression hearing specifically found Hendrickson was not on work release at the time of the warrantless search:

> 2.16. The Defendant never participated in work release after he was transferred to the Cowlitz County jail on February 15, 1992.

> 2.17. *The Defendant was not on work release when his pickup truck was searched on February 19, 1992.*

(Emphasis added.) Clerk's Papers at 36. The State has not

assigned error to these findings, and they are verities on appeal.

The State also argues that Hendrickson gave his consent to the search by signing and accepting the work release rules that permitted such searches. Consent is one of the exceptions to the "per se unreasonable" rule. At the suppression hearing, the trial court concluded as a matter of law that Hendrickson's consent was still valid at the time of the warrantless search, even though he was no longer on work release status.

By signing the work release rules, Hendrickson agreed to the following:

> All releasees are subject to legally accepted chemical and physiological tests for determination of alcohol and/or drug consumption. Also releasees are subject to search of their person, personal possessions, vehicles used in going to and from work, and any area used or controlled by work release, at any time deemed necessary by the work release director.

The trial court determined that, because Hendrickson never revoked the consent to search provision in the work release rules, it was still in effect when the police searched the truck on February 19.

We disagree. The exceptions to the requirement of a warrant, including consent, are " 'jealously and carefully drawn.' " *State v. Bradley*, 105 Wn.2d 898, 902, 719 P.2d 546 (1986) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454, 91 S. Ct. 2022, 29 L. Ed. 2d 120 (1971) ). Hendrickson was no longer on work release status on February 19. Because Hendrickson waived his art. I, § 7 and Fourth Amendment rights and consented to searches of his vehicle in return for permission to participate in the work release program, his termination from that program terminated his consent to search without the necessity for him to take specific action to revoke the consent.

Finally, the State contends that a vehicle seized for purposes of civil forfeiture under RCW 69.50.505 may be searched at will, citing *State v. McFadden*, 63 Wn. App.

441, 449, 820 P.2d 53 (1991), *review denied*, 119 Wn.2d 1002 (1992). This court has generally discussed warrantless searches of vehicles under art. I, § 7 in the context of a search incident to arrest. We have been sensitive to the reality that the passenger compartment of a vehicle may harbor weapons for an occupant, and to the exigencies that an occupant could easily destroy evidence in the vehicle while a warrant was being sought, or even drive the vehicle away. *State v. Johnson, supra; State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989); *State v. Patterson*, 112 Wn.2d 731, 774 P.2d 10 (1989); *State v. Stroud*, 106 Wn.2d 144, 147, 720 P.2d 436 (1986); *State v. Gluck*, 83 Wn.2d 424, 518 P.2d 703 (1974). But this was not a warrantless search incident to Hendrickson's arrest. Hendrickson was arrested in jail, not in his truck.[2]

The State also concedes that exigent circumstances were not present here. This fact is borne out by the ease with which the State procured a warrant to search Hendrickson's home on February 20. There is nothing in the record to indicate the police would have had any difficulty in securing a warrant to search the Hendrickson truck, and the State does not now argue that any such difficulty existed.

The February 19 search of Hendrickson's truck was not an inventory search. The inventory search actually occurred on February 15 and revealed nothing of significance to the police. The search here pertained to the investigation of an entirely new crime brought to the attention of the police by an anonymous informant.

The essence of the State's argument is that we should recognize a new exception to the requirement of a warrant where a civil forfeiture has been initiated under RCW 69.50.505. Not even *McFadden* approved so extensive a rule. In that case, McFadden was arrested while in posses-

---

[2]*See State v. Smith*, 119 Wn.2d 675, 683, 835 P.2d 1025 (1992); *State v. Hill*, 68 Wn. App. 300, 842 P.2d 996 (delay between arrest and search of vehicle must not be unreasonably long), *review denied*, 121 Wn.2d 1020 (1993); *State v. Boyce*, 52 Wn. App. 274, 758 P.2d 1017 (1988).

sion of cocaine. The police then searched the van in which McFadden had arrived at the scene of his arrest. "The detectives testified that they decided to seize the vehicle based on the fact that it was used to facilitate a drug transaction." *McFadden*, 63 Wn. App. at 443. They found 83.9 grams of cocaine in an unlocked toolbox in the van. *Id.*

McFadden argued that the search of his van following its seizure was unconstitutional. The Court of Appeals explicitly treated that search as an inventory search. *McFadden*, 63 Wn. App. at 448. The court concluded: "We hold that a motor vehicle seized pursuant to RCW 69.50.505 on probable cause that it is used to facilitate a drug transaction is subject to a valid inventory search and evidence found in the course of such a search is admissible at trial." *McFadden*, 63 Wn. App. at 449. There is nothing remarkable about this holding. A routine inventory search is a recognized exception to the warrant requirement. *State v. Houser*, 95 Wn.2d 143, 153, 622 P.2d 1218 (1980).

■ In its reliance on *McFadden*, the Court of Appeals here ignored the distinction between inventory and investigatory searches. An investigatory search is a search that occurs upon probable cause of the presence of criminal activity. *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987) (warrantless searches within police discretion so long as they are based on something other than suspicion of criminal activity). Chief Deputy Sheriff Bardsley testified that he conducted the warrantless search in response to the receipt of information from an informant whose identity Bardsley kept confidential. The search pertained to a crime other than the one for which Hendrickson was arrested and his truck seized. The search of Hendrickson's vehicle on February 19 was therefore an investigatory search, as it followed a tip that there was incriminating evidence hidden in the vehicle. Because the search of Hendrickson's vehicle on February 19 was an investigatory search, this portion of the *McFadden* opinion is not good authority for approving the search.

The Court of Appeals writes that the police had the right to search the truck without a warrant after its seizure for purposes of RCW 69.50.505, stating:

> [The *McFadden* court] then concluded that since the government's right to seize and forfeit a vehicle vests at the time of the illegal conduct, at the time of seizure the vehicle can be considered the government's own property. Thus, a warrant to search is not necessary. *McFadden*, at 448-49. We see no basis to distinguish *McFadden* from the facts here.

*State v. Hendrickson*, No. 16371-3-II, slip op. at 10 (Wn. App. Nov. 4, 1994).

■ The notion that property once seized under RCW 69.50.505 "can be considered the government's own property" is wrong. The civil forfeiture statute prescribes a detailed process, involving notice and the opportunity to be heard, before the seized property may be declared forfeited. The seizure is simply the first step in the process. Until the trier of fact actually enters a judgment of forfeiture of the seized property at the conclusion of an evidentiary hearing, *the title to that property resides in the person from whom the property was seized.* In fact, under Washington's civil forfeiture law, the rights of innocent parties in the chain of title are expressly protected. *See* RCW 69.50.505(a)(7); RCW 69.50.505(d)-(e).

Some federal courts have held that where police have probable cause to believe a car is subject to forfeiture, or have validly seized a car for forfeiture, the police may search the car without a warrant. *See, e.g., United States v. Alvarez*, 833 F.2d 724, 728-29 (7th Cir. 1987); *United States v. Edge*, 444 F.2d 1372, 1375 (7th Cir. 1971); *United States v. $29,000 -- U.S. Currency*, 745 F.2d 853, 856 (4th Cir. 1984); *United States v. Harris*, 727 F.2d 401, 405 (5th Cir. 1984); *United States v. Merryman*, 630 F.2d 780, 785 (10th Cir. 1980); *Johnson*, 572 F.2d at 234; *United States v. Zaicek*, 519 F.2d 412, 414-15 (2d Cir. 1975); *United States v. Young*, 456 F.2d 872, 875 (8th Cir. 1972). *Contra United States v. Salmon*, 944 F.2d 1106 (3rd Cir. 1991). These cases

follow from *Cooper v. California*, 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967), a case, like *McFadden*, where the police seized a vehicle pursuant to a forfeiture statute and happened to encounter incriminating evidence during an inventory search. In justifying its holding, the Court relied on the *Rabinowitz* test: "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States v. Rabinowitz*, 339 U.S. 56, 66." *Cooper*, 386 U.S. at 62. In the term following *Cooper*, however, the Court explicitly abandoned the *Rabinowitz* test, *Chimel v. California*, 395 U.S. 752, 768, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and replaced it the next year with the "per se unreasonable" rule. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1969). Thus, it is at least questionable whether *Cooper* would come out the same way now under the "per se unreasonable" rule rather than the *Rabinowitz* test.

Regardless, we decline to adopt the view of the cited federal courts, as art. I, § 7 requires a more restrictive view of investigatory searches. We adopt the view expressed in *State v. Patterson*, 112 Wn.2d 731, 734, 774 P.2d 10 (1989), where we cited with approval the language of the Oregon Supreme Court in *State v. Kock*, 302 Or. 29, 33, 725 P.2d 1285 (1986):

> We nevertheless hold that any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist.

In this case, the police informed Hendrickson of their intent to forfeit his truck on February 15, but they did not serve the necessary formal summons to forfeit the truck until February 20, the day *after* they searched it. The police conducted an inventory search on February 15 and

discovered no contraband. They parked the truck in the jail parking lot. The police search on February 19 was investigative in nature. There were no exigent circumstances present here: there is no indication that the police were in "hot pursuit" or their investigation was in any fashion imperiled by obtaining a warrant.

Because the State has not carried its burden of overcoming the "per se unreasonable" presumption by demonstrating any of the narrow exceptions to a warrant applied to the search of Hendrickson's vehicle on February 19, we hold the search was unconstitutional and that the trial court should have suppressed the evidence produced in that search.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Without objection from Hendrickson's trial counsel, two documents were introduced into evidence showing Hendrickson's prior judgments and sentences for drug-related offenses. Moreover, the jury instructions contained a special verdict form that asked the jury to decide if Hendrickson had previously been convicted of prior drug offenses. Hendrickson claims his counsel's failure to object to the evidence of his prior convictions constitutes ineffective assistance of counsel.

■ Effective assistance of counsel is guaranteed by both U.S. CONST. amend. VI and WASH. CONST. art. I, § 22 (amend. x). *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). In *Strickland*, the Court established a two-part test for ineffective assistance of counsel. First, the defendant must show deficient performance. In this assessment, the appellate court will presume the defendant was properly represented. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856, 113 S. Ct. 164, 121 L. Ed. 2d 112 (1992); *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987); *Strickland*, 466 U.S. at 688-89. Deficient performance is not

shown by matters that go to trial strategy or tactics. *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994); *State v. Mak*, 105 Wn.2d 692, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986).

Second, the defendant must show prejudice – "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This showing is made when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Thomas*, 109 Wn.2d at 226. If either part of the test is not satisfied, the inquiry need go no further. *Lord*, 117 Wn.2d at 894; *State v. Fredrick*, 45 Wn. App. 916, 729 P.2d 56 (1986).

In this case, the prosecution elicited the evidence of the prior convictions not from Hendrickson, but from Chief Deputy Sheriff Bardsley during the prosecution's presentation of the case. None of the conditions in ER 609(a)[3] applies in this case, and we cannot discern a reason why Hendrickson's counsel would not have objected to such damaging and prejudicial evidence. Hendrickson could not have kept from the jury that he was incarcerated during the crime for which he was being tried, of course, but there was no compelling need for the jury to know the cause of that incarceration. Nor did the jury need to know at all that Hendrickson had a second prior conviction for a drug-related offense. Prior convictions that may enhance a current sentence need be presented only to the judge, not to the jury.

The State admits that "prior convictions, particularly if for crimes similar to those with which a defendant is currently charged are generally inadmissible because of the

---

[3]ER 609(a) provides:

For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during the examination of the witness but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered, or (2) involved dishonesty or false statement, regardless of the punishment.

prejudicial effect they might have on a jury," Resp't's Br. at 17, but argues that allowing the State without objection to admit evidence of prior convictions was a tactical decision by Hendrickson: "Instead of letting the jury speculate about the reason why Defendant was in jail at the time the crime occurred, defense counsel made the tactical decision to be candid about the nature of Defendant's prior convictions." Resp't's Br. at 20. The State offers no support for this proposition, and nothing supporting it appears in the record.

The Court of Appeals accepted the State's explanation, and went even further:

[T]he defense suggested that Hendrickson's history as a drug offender motivated Pierce to select him as a believable target for a "set up." The defense theory apparently was that the police were more likely to believe that Hendrickson, as opposed to another prisoner who did not have a history of drug offenses, was a supplier of drugs to prisoners in jail.

*Hendrickson*, slip op. at 13. Hendrickson is correct in noting that there is nothing in the record on appeal to support the court's supposition. Hendrickson's counsel waived opening statement, and did not say in his closing argument that Hendrickson's history as a drug offender motivated Pierce to select him as a likely target for a set up. In fact, during his cross-examination, Hendrickson testified he did not know why Pierce had set him up. Thus, the State and Court of Appeals' conclusion that Hendrickson's trial counsel made a tactical decision by not objecting to the introduction of evidence of Hendrickson's prior convictions has no support in the record. The first prong of the *Strickland* test is satisfied.

In order to show prejudice, the second *Strickland* prong, we must determine that but for counsel's failure to object, the outcome would have been different. Hendrickson bears the burden of showing prejudice. *State v. McFarland*, 127 Wn.2d 322, 337, 899 P.2d 1251 (1995).

First, we must determine if the trial court would have

sustained Hendrickson's objection to the introduction of evidence of his prior, drug-related convictions. We hold that such evidence would not have been admissible because its prejudicial effect would have outweighed its probative value.

Next, we must determine whether the admission of the objectionable evidence prejudiced Hendrickson's right to a fair trial. To support his argument, Hendrickson cites *State v. Escalona*, 49 Wn. App. 251, 742 P.2d 190 (1987). There, the Court of Appeals held the trial court abused its discretion by not declaring a mistrial after the victim testified in front of the jury that Escalona had a record of having stabbed someone. The trial court had granted a motion in limine to exclude evidence of Escalona's prior conviction. Although the trial court instructed the jury to disregard the testimony of the prior offense, the jury found Escalona guilty after the court denied the motion for a mistrial. The Court of Appeals reversed the conviction because it was concerned that the jury might have used the information of Escalona's prior conviction to conclude he had acted on this occasion in conformity with the assaultive behavior he had demonstrated in the past. *Escalona*, 49 Wn. App. at 256-57.

In the present case, the prejudicial effect of the jury's knowledge of Hendrickson's two prior drug convictions is viewed against the backdrop of the evidence in the record. The evidence in the record powerfully supports Hendrickson's guilt on the delivery count. On this record, we cannot state that the result of the trial court would have been different had the evidence of the prior drug convictions not been admitted. Hendrickson was not prejudiced; the second prong of the *Strickland* test is not met. Consequently, Hendrickson has not established ineffective assistance of counsel in violation of the Sixth Amendment.

## C. SENTENCE ENHANCEMENT FOR DELIVERY OF COCAINE IN A JAIL

■ Hendrickson challenges his enhanced sentence for

delivering drugs in jail both on the sufficiency of the evidence to convict and the constitutionality of the statute. RCW 9.94A.310(5) provides for an enhanced sentence for delivery of drugs in a jail:

> The following additional times shall be added to the presumptive sentence if the offender or an accomplice committed the offense while in a county jail or state correctional facility as that term is defined in this chapter . . . .
>
> For the purposes of this subsection, all of the real property of a state correctional facility or county jail shall be deemed to be part of that facility or county jail.

Hendrickson argues that the delivery of cocaine for which he was convicted occurred outside the jail, and that his sentence should not have been enhanced. He claims that since the delivery occurred on the steps leading into the county courthouse in which the jail was housed, it did not occur on the real property of the county jail.

As the Court of Appeals correctly noted, the legislative direction that a county jail includes all of its real property is broad enough to cover the area in question here. *Hendrickson*, slip op. at 15. The ash can was located on the steps just outside the jail. The area was used as part of the jail's facilities. Hendrickson's narrow interpretation of the statute is contrary to the actual utilization of the area in question. Moreover, county jails, unlike state prisons, share physical facilities with numerous other county agencies. If the Legislature had wished to limit the statute's application to only the jail itself, it could have done so. It did not. We reject Hendrickson's view of RCW 9.94A.310 because it is contrary to the legislative intent of deterring the delivery of drugs in jail facilities.

In order to challenge the sufficiency of the evidence, Hendrickson was obliged to prove that, after viewing the evidence in a light most favorable to the State, a rational trier of fact could not have found the essential elements of RCW 9.94A.310(5) to have been proved beyond a reasonable doubt. *State v. Salas*, 127 Wn.2d 173, 183, 897 P.2d 1246 (1995).

Hendrickson delivered the cocaine under an ash can on the back steps of the Wahkiakum County Courthouse, where the prisoners of the county jail are routinely taken to smoke. The prisoners access the smoking area through a door not open to the public. This was part of the real property of the jail. There was substantial evidence that Hendrickson delivered drugs in a county jail here for purposes of RCW 9.94A.310(5).

Hendrickson also claims that imposition of an enhanced sentence under RCW 9.94A.310 was improper because the statute is void for vagueness, and therefore deprived him of his right to due process under both the state and federal constitutions. The crux of his argument is that the statute is so vague as to the meaning of the real property of the county jail that Hendrickson could not have known in advance that placing the cocaine under an ash can just outside the jail could result in a sentence enhancement.

In order to establish the statute was unconstitutionally vague in a case not involving rights under the First Amendment, a person may challenge the statute on one of two grounds. Hendrickson must prove beyond a reasonable doubt that the statute does not "convey a sufficiently definite warning of proscribed conduct when measured by common understanding and practice." *In re Powell*, 92 Wn.2d 882, 888, 602 P.2d 711 (1979) (quoting *State v. Jordan*, 91 Wn.2d 386, 389, 588 P.2d 1155 (1979)). Alternatively stated, Hendrickson must show beyond a reasonable doubt that ordinary people cannot understand what constitutes illegal conduct from the language of the statute.

The second basis for challenging a statute as vague is that it fails to provide ascertainable standards of guilt to protect against arbitrary enforcement. *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990).

This vagueness challenge in a case not involving the First Amendment is determined on the basis of the statute's application to the facts of this case, rather than on a facial analysis of the statute. *Douglass*, 115 Wn.2d at

181-82. The statute is presumed to be constitutional, and the person challenging the statute for vagueness has a heavy burden in meeting the "beyond a reasonable doubt" standard. *Douglass*, 115 Wn.2d at 178. Hendrickson has not met this burden.

 An ordinary person would understand the criminal conduct proscribed by RCW 9.94A.310. *See In re Coria*, 120 Wn.2d 156, 839 P.2d 890 (1992) (enhanced sentence for drug sales near school bus stop not unconstitutionally vague). Hendrickson placed the drugs in an ash can in an area frequently utilized by jail inmates for smoking. It was clear that this area was part of the "real property" of the Wahkiakum County Jail. Moreover, under the second aspect of the vagueness test, a statute supplies sufficient standards unless it requires resort to "inherently subjective terms" to define the illegal behavior or invites inordinate police discretion in enforcing the statute. *Douglass*, 115 Wn.2d at 181. A ban on drug sales in correctional facilities or the real property associated with such facilities such as the ash can in question here does not open the door to arbitrary enforcement practices. The statute here is not unconstitutionally vague.

## CONCLUSION

We adhere to and reiterate the view that warrantless searches are unreasonable per se unless one of the narrow exceptions to that general constitutional standard is present and proved by the State. No exception is present here. Because the search of Hendrickson's truck on February 19 violated art. I,§ 7 of the Washington Constitution, we reverse the Court of Appeals' decision on the count of possession with intent to deliver and remand the case to the trial court for further proceedings in light of this opinion.

We affirm Hendrickson's conviction for delivery. He was not denied effective assistance of counsel because two prior drug convictions were admitted into evidence, given the powerful evidence of Hendrickson's guilt on the charge.

His enhanced sentence under RCW 9.94A.310(5) is proper in light of the Legislature's clear intent to proscribe drugs in correctional facilities.

DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, and ALEXANDER, JJ., and PEKELIS, J. Pro Tem., concur.