[Nos. 54521-3-I; 54522-1-I. Division One. August 15, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH DUANE BERRY, *Appellant*.

*Dana M. Lind* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Catherine M. McDowall, Deputy*, for respondent.

¶1 BAKER, J. — Keith Berry pleaded guilty to forgery and identity theft in the second degree and was convicted after a jury trial of possession of methamphetamine and a different count of identity theft in the second degree. He

moved to withdraw his guilty plea to identity theft and also moved for a new trial. After both motions were denied, Berry appealed.

¶2 Berry's appeal requires us to interpret the identity theft statute, former RCW 9.35.020 (2003).[1] Berry argues that under that statute, the means of identification used by the defendant must be that of a real person, not merely false identification. He also argues that the statute only outlawed actual use of the means of identification and not merely obtaining or possessing the identification of another person. He also argues that ineffective assistance of counsel denied him a fair trial.

¶3 Because we agree that to commit identity theft the defendant must obtain, possess, use, or transfer the means of identification of *a real person*, we reverse the trial court's denial of Berry's motion to withdraw his guilty plea. But because actual *use* of the means of identification is not required, we affirm the trial court's denial of the motion for new trial. We also do not find ineffective assistance of counsel.

I

¶4 This is a consolidated appeal from two cases involving Berry. In one, Berry was charged with forgery and second degree identity theft for events that occurred on February 9, 2003. In the other, Berry was charged with possession of methamphetamine and second degree identity theft for events that occurred on November 21, 2002.

¶5 The information for the charges related to events that occurred on February 9, 2003 alleged:

That the defendant KEITH D. BERRY in King County, Washington, on or about February 9, 2003, did knowingly obtain, possess, use or transfer a means of identification or financial information, to wit: a driver's license with the name and address of Tim Davis, with the intent to commit, or to aid or abet, any crime and obtained an aggregate total of credit,

---

[1] Former RCW 9.35.020 (2003), *amended by* Laws of 2004, ch. 273, § 2.

money, goods, services, or anything else of value that was less than $1500 or obtained no credit, money, goods, services or anything of value. . . .

¶6 Berry entered an *Alford*[2] plea to both the forgery and the second degree identity theft charges and agreed to let the trial court use the certification for determination of probable cause to find a factual basis for his plea and sentencing. The certification provided the following facts:

On 2-9-03 at about 1913 hours, Keith Berry approached a clerk inside the Home Depot home improvement store located at 1715 S. 352nd St., Federal Way, King County, WA., and attempted to purchase $139.57 in merchandise with a business check.

Berry presented identification in the name of Timothy J. Davis, and filled out a business check in the business account of Computech dba. Tim J. Davis.

The clerk, Michelle Jones, felt that the business check was suspicious, and a check verification revealed that the check was forged. The Federal Way police department was notified, and Officer S. Swanson responded and arrested Berry. Berry subsequently admitted to committing the fraud, stating that he knew that the check and ID he presented were forgeries.

Detective S. Parker contacted the bank listed on the check Berry presented, Bank of America, and determined that the account holder information and routing number were fictitious, however the checking account number was a valid Bank of America checking account.

Detective Parker then contacted the account holder for the checking account number on the bottom of Berry's check, Herb Paulson. Paulson subsequently provided a telephonic statement advising that he does not know Keith Berry, did not give Berry permission to use his checking account number, or permission to access or sign on his checking account.

¶7 The trial evidence in the other case was that Berry was a passenger in a car that was pulled over for a traffic violation. During the stop, Berry was arrested for possession of methamphetamine. A search incident to his arrest produced credit cards, checks, and a temporary driver's

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

license in the name of "Robert Cronk." Berry admitted he had purchased the credit cards, checks, and identification and stated that although he intended to use them, he had not yet done so.

¶8 Joan Cronk, Robert Cronk's widow, testified that she served as executor of Cronk's estate and that she did not give Berry permission to possess or use any of Robert's credit cards or accounts. She also testified that a number of charges were made on Robert's credit cards after he died, but she suspected that a woman with whom Robert had been living at the time of his death had made the charges. Berry was found guilty of possession of methamphetamine and second degree identity theft.

¶9 At sentencing, Berry moved pro se to withdraw his guilty plea and for a new trial. New counsel was appointed and filed a motion to withdraw Berry's guilty plea for second degree identity theft on the grounds that the certification for probable cause failed to establish a factual basis for the plea. Berry also moved for a new trial on the ground that the to-convict instruction allowed the jury to find him guilty of identity theft without finding that he had used the victim's means of identification, an element Berry argued was required. He also argued that there was insufficient evidence of use to support a conviction.

¶10 The trial court denied both motions. At the same hearing, Berry also argued pro se a motion to dismiss, which the trial court denied. The court imposed standard range, concurrent sentences.

II

¶11 We review for an abuse of discretion a trial court's denial of a motion to withdraw a guilty plea.[3] A court abuses its discretion if it bases its decision on clearly untenable or manifestly unreasonable grounds.[4]

---

[3] *State v. Jamison*, 105 Wn. App. 572, 589-90, 20 P.3d 1010 (2001).

[4] *Jamison*, 105 Wn. App. at 590.

■ ¶12 Berry argues that the trial court erred by denying his motion to withdraw his guilty plea to second degree identity theft.[5] Because Berry moved to withdraw before his judgment and sentence, the motion is governed by Superior Court Criminal Rule (CrR) 4.2(f): "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice."

■ ¶13 Berry argues his plea was not voluntary because it lacked a factual basis. CrR 4.2(d) provides that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." Our Supreme Court has commented that "the establishment of a factual basis . . . relates to the defendant's understanding of his or her plea."[6] "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."[7] Therefore, "[t]he purpose behind the factual basis requirement is to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge, but without realizing that his conduct does not actually fall within the charge."[8]

■ ¶14 In its determination of "whether a factual basis exists for a plea, the trial court need not be convinced beyond a reasonable doubt that the defendant is in fact guilty."[9] Instead, the court may determine that "a factual

---

[5] We do not address the motion to dismiss because, although Berry listed the motion in the order authorizing appeal in forma pauperis, he did not argue it in his briefing or additional statement of grounds. *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004).

[6] *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 591-92, 741 P.2d 983 (1987).

[7] *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969).

[8] 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3713, at 91-92 (3d ed. 2004).

[9] *State v. Saas*, 118 Wn.2d 37, 43, 820 P.2d 505 (1991).

basis exists if there is sufficient evidence for a jury to conclude that the defendant is guilty."[10]

¶15 Former RCW 9.35.020 provided:

(1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(2)(a) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony.

(b) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall constitute identity theft in the second degree. Identity theft in the second degree is a class C felony.[11]

■ ¶16 Berry argues that the certification for determination of probable cause was insufficient to support the crime of identity theft because it did not purport to name a real person. The certification in pertinent part reads:

Berry presented identification in the name of Timothy J. Davis, and filled out a business check in the business account of Computech dba. Tim J. Davis.

. . . .

Detective S. Parker contacted the bank listed on the check Berry presented, Bank of America, and determined that the account holder information and routing number were fictitious, however the checking account number was a valid Bank of America checking account.

Detective Parker then contacted the account holder for the checking account number on the bottom of Berry's check, Herb Paulson.

---

[10] *Saas*, 118 Wn.2d at 43.

[11] Former RCW 9.35.020.

The only real person named in the certification was Herb Paulson. But Berry was not charged with identity theft of Herb Paulson. Instead, he was charged in relevant part with using "a means of identification or financial information, to wit: a driver's license with the name and address of Tim Davis . . . ."

¶17 The State argues that Berry's claim fails for two reasons: (1) the telephone book provides proof that as many as 21 persons named Tim or Timothy Davis live in the Seattle Metro area and (2) the certification provides ample evidence that Berry committed identity theft of Herb Paulson by using his account number to obtain credit.

¶18 The State's argument that Berry committed identity theft even though the evidence did not link Berry's forged means of identification with a specific, real person fails to recognize whom the legislature intended to protect by this statute. When the legislature created the identity theft statute, it noted that "financial information is personal and sensitive information that if unlawfully obtained by others may do significant harm to *a person's* privacy, financial security, and other interests."[12] Moreover, the legislature defined a "means of identification" as "information or an item that is not describing finances or credit but is *personal to or identifiable with an individual or other person* . . . ."[13] The fact that numerous real persons named Tim Davis may live in the Seattle area does nothing to cure the failure to charge Berry with stealing the identity of a specific, real person.

¶19 Nor does identifying Herb Paulson as the owner of the account on which Berry issued a forged check cure the omission. Berry simply used an account number that matched Paulson's account number. He did not use Paulson's name or other examples of identity.

---

[12] LAWS OF 1999, ch. 368, § 1 (emphasis added).

[13] RCW 9.35.005(3) (emphasis added).

¶20 The State argues that, under RCW 10.37.090 and *State v. Plano*,[14] the name of the actual victim is not an essential element of the crime of identity theft. But the court in *Plano* and the legislature in creating RCW 10-.37.090 were not contemplating the crime of identity theft. By definition, identity is a key element of identity theft. Without proving the identity of the victim, the crime is merely forgery or simple theft.

¶21 Because Berry was not charged with stealing the identity of a specific, real person, the certification did not (and could not) provide a factual basis for the plea. Without that factual basis, the plea was not truly voluntary. Therefore, the trial court erred in denying Berry's motion to withdraw his guilty plea to identity theft. We reverse and remand.

██ ██ ¶22 Berry argues that the trial court erred by denying his motion for new trial because the evidence was insufficient to convict him of identity theft of Robert Cronk. In the trial court, Berry based his motion on CrR 7.5(a)(8), claiming that the verdict was contrary to law and the evidence. We will not disturb a trial court's decision to grant or deny a new trial unless the court's decision constituted a manifest abuse of discretion, i.e., the decision was based on untenable grounds or made for untenable reasons, or was based upon a mistake of law.[15] To determine whether the court abused its discretion, we examine whether the evidence was sufficient to support Berry's conviction of identity theft in the second degree. The test is whether, after viewing the evidence in the light most favorable to the State, no reasonable jury could have found the elements of the crime charged beyond a reasonable doubt.[16]

██ ¶23 Berry argues that the evidence was not sufficient because RCW 9.35.020 requires that the State prove

---

[14] 67 Wn. App. 674, 838 P.2d 1145 (1992).

[15] *State v. Jackman*, 113 Wn.2d 772, 777, 783 P.2d 580 (1989).

[16] *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

he "used" the victim's means of identification. We interpret statutes de novo.[17]

¶24 As noted above, former RCW 9.35.020 provided:

(1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(2)(a) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony.

(b) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall constitute identity theft in the second degree. Identity theft in the second degree is a class C felony.[18]

¶25 Berry argues that because he did not use Cronk's means of identification, he was not guilty of identity theft. His argument relies on a misinterpretation of the statute. He argues that because subsection (1) of former RCW 9.35.020 did not identify a crime, it was not the operative subsection in defining the crime of identity theft. Instead, Berry argues that the court must look to subsections (2)(a) and (2)(b). Based on the language of those two subsections, which defined identity theft in the first degree and identity theft in the second degree respectively, identity theft was committed when the accused or an accomplice used the victim's means of identification. Subsections (2)(a) and (2)(b) did not repeat the language used in subsection (1),

---

[17] *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004).

[18] Former RCW 9.35.020.

which provided that "[n]o person may knowingly *obtain, possess, use, or transfer* a means of identification . . . of another person . . . with the intent to commit . . . any crime."[19] Berry's argument ignores the straightforward prohibition against obtaining and possessing another's means of identification with intent to commit a crime.

¶26 Where there is no ambiguity, we will not construe the statute.[20] Subsection (1) of the identity theft statute prohibited obtaining, possessing, using or transferring a means of identification of another person with the intent to commit a crime.[21] Subsections (2)(a) and (2)(b) merely defined the difference between first degree and second degree identity theft. Both subsections (2)(a) and (2)(b) began with the language "violation of this section," relying on subsection (1) to define what was prohibited by the statute. By including the language "violation of this *section*," the legislature indicated clearly that the three subsections must be read together, with subsection (1) defining the prohibited acts, and subsections (2)(a) and (2)(b) explaining the difference between first degree and second degree. There was no ambiguity in the language of former RCW 9.35.020; obtaining and possessing another person's means of identification with intent to commit a crime was illegal.

¶27 Berry argues that our interpretation of former RCW 9.35.020 in *State v. Leyda*[22] supports his argument that he did not commit identity theft because he did not use the means of identification. In *Leyda*, the defendant argued that the unit of prosecution for identity theft should be the number of pieces of financial information or means of

---

[19] Former RCW 9.35.020(1) (emphasis added).

[20] *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) (citing *Food Servs. of Am. v. Royal Heights, Inc.*, 123 Wn.2d 779, 784-85, 871 P.2d 590 (1994)).

[21] Former RCW 9.35.020(1).

[22] 122 Wn. App. 633, 94 P.3d 397 (2004), *review granted*, 153 Wn.2d 1023 (2005).

identification obtained or possessed.[23] But we held that "the unit of prosecution for identity theft is the use of the victim's means of identification or financial information with intent to commit a crime."[24] We explained that the defendant's reading of the statute would lead to a scenario that was not in accord with the legislature's intent: a thief "who possessed a sack of stolen credit cards, intending to use them but never doing so, would commit as many crimes as the sack held cards, while the thief who possessed only one card, but used it over and over, would commit only one crime."[25]

¶28 Berry misinterprets the holding in *Leyda*. When we held that the unit of prosecution was the "use" of the means of identification, we were not commenting on the difference between "using" a means of identification and "obtaining" or "possessing" a means of identification. Instead, we were selecting use as the unit of prosecution rather than the number of pieces of identification. The holding in *Leyda* is not informative to our analysis here.

¶29 Berry also argues that the "to convict" instruction was defective because it allowed the jury to convict him based solely on possession. We do not address the merits of this argument, because Berry proposed the instruction that was given. Our Supreme Court has held that "[a] party may not request an instruction and later complain on appeal that the requested instruction was given."[26]

¶30 Berry argues that the trial court erred in denying his motion for new trial because ineffective assistance of counsel denied him his right to a fair trial. To prove ineffective assistance of counsel, "the defendant must show deficient performance . . . [and] the defendant must show prejudice—'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

---

[23] *Leyda*, 122 Wn. App. at 637.

[24] *Leyda*, 122 Wn. App. at 638.

[25] *Leyda*, 122 Wn. App. at 638.

[26] *State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979).

reliable.' "[27] In assessing counsel's performance, "the appellate court will presume the defendant was properly represented."[28] Decisions of trial strategy or tactics are not evidence of deficient performance.[29] Counsel's errors are serious enough to deprive the defendant of a fair trial "when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different."[30]

¶31 In his opening brief, Berry argues that he received ineffective assistance of counsel because his counsel proposed the allegedly erroneous "to convict" instruction. Because this argument relies on his previous argument that possession of another person's means of identification with intent to commit a crime is not enough to convict for identity theft, it fails. Therefore, Berry has not shown that his counsel's performance was deficient.

¶32 In his statement of additional grounds for review, Berry argues that he received ineffective assistance of counsel related to his drug possession conviction. He claims that his attorney failed to challenge some of the evidence presented by the prosecution. But Berry fails to show that there is a reasonable probability that such evidentiary challenges were likely to be successful. Thus, he has not shown that the desired evidentiary challenges would likely have led to a different result at trial.

¶33 None of Berry's other arguments have merit.

¶34 Reversed and remanded in part and affirmed in part.

KENNEDY and AGID, JJ., concur.

---

[27] *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[28] *Hendrickson*, 129 Wn.2d at 77.

[29] *Hendrickson*, 129 Wn.2d at 77-78.

[30] *Hendrickson*, 129 Wn.2d at 78.