IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37615-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRANDON MICHAEL FORD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Brandon Ford appeals his conviction for fourth degree assault, asserting he received ineffective assistance of counsel. We disagree and affirm.

FACTS

Randi Empting and Brandon Ford lived together in a rental home in Spokane Valley, Washington. One evening, Ford returned home to find Comcast had turned off their Internet service. This led to an argument between the two about whose responsibility it was to pay the bill. The argument became heated and Ford tried to remove Empting from the rental. Empting refused, so Ford temporarily left.

While gone, he and Empting texted back and forth, with Empting trying to convince Ford to let her stay and Ford telling her to leave. Ford returned once, then left, and returned again.

Ford asked Empting to give him her phone, which she did. When she learned he was going to use the phone to cancel her cell service, Empting immediately took back the phone and went outside to call her mother in Vancouver. Ford soon after went outside and approached Empting and again asked for her cell phone. Empting said she was still on the phone with her mother and she would give him her phone after she planned for the night. Ford then grabbed Empting by her neck, took her phone, and threw her to the gravel driveway.

Ford took Empting's phone inside the house and Empting got up, ran after him, and took back her phone. Ford kicked Empting's feet out from under her and wrestled her to the ground. He then placed his knee in her stomach area and choked her while her mother listened on the phone. Ford used his knee to keep her pinned to the ground. Ford then began strangling Empting, causing her to have difficulty breathing.

Empting kept hold of her phone. After the assault ended, she said to her mother that Ford had "thrown her down and that he had got on top of her and he had choked her twice, once in the house and once outside." Report of Proceedings (RP) at 243.

Spokane County Deputy Sheriff Michael Keys was dispatched to the rental for a domestic disturbance. Deputy Keys saw that Empting had a cut on her right pinky finger, a cut on her left thumb, bleeding from the left kneecap area, and a red mark across her

2

mid-throat line. He took photographs of her injuries, but the photographs were poor

quality and did not depict the injury to Empting's throat. Deputy Keys then spoke with

Ford. Ford said he and Empting had argued about the Internet bill and the cell phone. He

admitted he placed his knee on her chest in an attempt to get the phone.

The State charged Ford with one count of assault in the second degree, with a

domestic violence aggravator. The matter proceeded to trial where Empting, her mother,

and Deputy Keys testified for the State. Ford testified in his own defense.

At the jury instruction conference, the State asked the court to instruct the jury on

the lesser included offense of fourth degree assault. Defense counsel submitted a *Petrich*[1]

instruction, which the court gave. The instruction read:

> The State alleges that the defendant committed acts of assault on
> multiple occasions. To convict the defendant of assault, one particular act
> of assault must be proved beyond a reasonable doubt, and you must
> unanimously agree as to which act has been proved. You need not
> unanimously agree that the defendant committed all the acts of assault.

Clerk's Papers at 92.

---

[1] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

During closing arguments, the State argued the jury should find Empting credible

and Ford not credible. Defense counsel agreed that credibility was crucial and portrayed

Empting as an emotional wreck and Ford as calm. Defense counsel argued, "Now,

[the prosecutor] wants you to think [Ford is] punishing her, he's trying to control her."

RP at 389. During the State's rebuttal, the prosecutor responded to this by discussing

specific instances of how Ford utilized power and control in his relationship with

Empting. Defense counsel did not object.

The jury found Ford not guilty of second degree assault, but convicted him of the

lesser included offense of fourth degree assault. It also returned a special verdict finding

the State had proved the domestic violence aggravator beyond a reasonable doubt.

Ford timely appealed.

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

Ford contends he was denied effective assistance of counsel. He argues the

*Petrich* instruction allowed the jury to convict him of uncharged conduct unrelated to the

elected purported strangulation inside the rental. We disagree.

This court reviews allegations of ineffective assistance de novo. *State v. Sutherby*,

165 Wn.2d 870, 883, 204 P.3d 916 (2009). To demonstrate ineffective assistance of

4

counsel, a petitioner must show both deficient performance and resulting prejudice.

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a

defendant fails to satisfy either prong, a court need not inquire further. *State v.*

*Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

A defendant has a right to be informed of the charges against him and, subject to

two exceptions, the State can only try a defendant for the offenses charged. *State v.*

*Peterson*, 133 Wn.2d 885, 889, 948 P.2d 381 (1997). One of the exceptions is the State

may try a defendant for a lesser degree crime than the charged crime. RCW 10.61.003;

*Peterson*, 133 Wn.2d at 889. This exception however requires that the State first allege

the offense that encompasses the lesser offense. *Id.*

Ford first argues the assaults that occurred outside were separate incidents from

the assaults that occurred inside. We consider five factors when determining whether

multiple assaultive acts constitute one course of conduct: (1) the length of time over

which the acts occurred, (2) the location of the acts, (3) the defendant's intent or

motivation for the acts, (4) whether the acts were uninterrupted, and (5) whether there

was an opportunity for the defendant to reconsider his acts. *State v. Villanueva-Gonzalez*,

180 Wn.2d 975, 985, 329 P.3d 78 (2014).

Here, Ford fought Empting for one purpose—to gain control over her cell phone.
The acts all seem to have occurred within a short period of time and within several feet of
each other. There was no interruption from outside to inside, except for the time it took
Empting to arise from the driveway and chase Ford inside. Weighing the five factors, we
consider the melee one course of conduct. Because the assaults were one course of
conduct, we conclude the charged second degree assault offense encompassed the lesser
fourth degree assaults.[2]

PROSECUTORIAL MISCONDUCT

Ford contends the prosecutor committed misconduct. He argues the prosecutor's
closing argument focused on power and control in domestic violence relationships in
order to elicit an emotional response from the jury. We disagree.

When reviewing an allegation of prosecutorial misconduct, this court looks to
whether the defendant establishes the prosecutor's conduct was both improper and

---

[2] Ford cites a few unpublished opinions to support his argument that this case
involves multiple acts—*State v. Sibley*, No. 36498-4-III (Wash. Ct. App. May 14, 2020)
(unpublished), http://www.courts.wa.gov/opinions/pdf/364984_unp.pdf; *State v. Coryell*,
No. 52369-8-II (Wash. Ct. App. Mar. 3, 2020) (unpublished), http://www.courts.
wa.gov/opinions/pdf/523698_unp.pdf, and *State v. Mackey*, No. 49198-2-II (Wash. Ct.
App. Jan. 9, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/
491982_unp.pdf. We note that those opinions involved assaults that occurred over a
longer period of time than here and/or involved interruptions between the assaults.

prejudicial.  *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).  Where a

defendant does not object during trial to the conduct, he is considered to have waived his

right to object unless the conduct is so flagrant and ill intentioned that a curative

instruction could not have neutralized the potential prejudice.  *In re Pers. Restraint of*

*Phelps*, 190 Wn.2d 155, 165, 410 P.3d 1142 (2018).  When defense counsel raises an

argument in closing, the prosecutor is free to respond to that argument.  *Id.* at 167.

Further, a prosecutor's reference to the dynamics of domestic violence is not itself

misconduct when inferred from trial testimony and evidence.  *State v. Magers*, 164 Wn.2d

174, 192, 189 P.3d 126 (2008).

Here, the prosecutor did not bring up any reference to "power and control" during

his initial closing argument.  The only reference cited by Ford is from the prosecutor's

rebuttal argument and only occurred after the defense attorney brought up the idea of

power and control in the relationship between Ford and Empting.  It was well within the

purview of the prosecutor to respond to this and his argument was entirely inferred from

the evidence at hand.  We conclude that the prosecutor did not commit misconduct by

making this rebuttal argument.

No. 37615-0-III
*State v. Ford*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Fearing, J.                        Staab, J.

8