[No. 29881-3-II.   Division Two.   April 26, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES J. PRICE, *Appellant*.

remand, the parties are directed to brief the application of RCW 13.40.285 for the superior court's instruction.

194

*Charles J. Price,* pro se.

*Thomas E. Doyle* and *Patricia A. Pethick,* for appellant.

*Edward G. Holm, Prosecuting Attorney,* and *Steven C. Sherman, Deputy,* for respondent.

¶1 BRIDGEWATER, J. — Charles J. Price appeals his convictions for four counts of first degree child molestation involving two different victims, R.I.T. and T.D.J. He argues that the admission of R.I.T.'s out-of-court statements regarding the sexual contact violated his right to confrontation and *Crawford v. Washington.*[1] Additionally, he argues that the evidence was insufficient to support a finding that he touched R.I.T. for purposes of sexual gratification and that he received ineffective assistance of counsel. We affirm.

## FACTS

¶2 In August 2001, Marianne Mann placed her four-year-old daughter, R.I.T., in a day care operated by Price and his wife. One evening in early October after Mann had picked R.I.T. up from day care, R.I.T. began pinching herself at the front of her diaper, saying "I have an owie." 2 Report of Proceedings (RP) (Dec. 10, 2002) at 23. Upon inspection, Mann observed that R.I.T.'s vaginal area was bright red and swollen. R.I.T. began making pinching motions with her fingers and stated that "Chucky had rubbed her there." 2 RP at 24. When Mann asked R.I.T. if there was another child named Chucky at her day care, R.I.T. said "Big Chucky." 2 RP at 24.

¶3 Two days later Detective Susan Bergt of the Thurston County Sheriff's Office interviewed R.I.T at the Providence

---

[1] *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

St. Peter Hospital sexual assault clinic. During the taped interview, R.I.T. told Detective Bergt that she called Price "Chucky." 2 RP at 99. She stated that Chucky had touched her "[r]ight here," pointing to her vaginal area. 2 RP at 99. Detective Bergt asked R.I.T. how Chucky had touched her, and R.I.T. lifted up her skirt, pinched her vagina over her clothing, and stated, "[t]hat's what he did." 2 RP at 99.

¶4 After the interview, Nancy Young, an advanced registered nurse practitioner, examined R.I.T. Young testified that R.I.T. had a normal genital exam and that there was no redness in her genital area. However, Young further testified that two days after the incident, she would expect any redness or inflammation to be gone. She concluded that her findings were consistent with R.I.T.'s account of what had happened.

¶5 Detective Bergt also interviewed Price. Price told Detective Bergt that R.I.T. was "more like an adult than a child" and that she preferred the company of adults. 2 RP at 104. Additionally, he stated that R.I.T. was a "needy" child who "liked to hug him a lot." 2 RP at 104-05. Price denied sexually touching R.I.T., stating that if he had touched her, it was accidental.

¶6 On March 14, 2002, Price was charged with five counts of first degree child molestation under RCW 9A.44.083. Count I charged first degree molestation of R.I.T., and the remaining four counts (counts II-V) charged first degree molestation of another child, T.D.J., for incidents that had occurred between April and July 1992.

¶7 Price twice moved to sever count I from the remaining counts before trial and again following trial, in motions to arrest judgment and for a new trial. Each time, the trial court declined to sever the counts. Price did not renew his motion for severance before or at the close of the evidence.

¶8 Prior to trial, the court also held a child hearsay hearing to determine whether R.I.T.'s out-of-court statements to her mother and Detective Bergt were admissible

at trial under RCW 9A.44.120.[2] At the hearing, Price stipulated that R.I.T. was competent to testify. R.I.T. testified that she did not like Chucky, stating "he rubbed me right here." RP (Nov. 25, 2002) at 10. The trial court held that that R.I.T.'s hearsay statements were admissible, finding that the statements were reliable and that R.I.T. was available as a witness for trial.

¶9 Trial before a jury commenced on December 9, 2002. R.I.T. took the stand, and the prosecutor asked her what Chucky would "do with [her] at the day care." 2 RP at 39. R.I.T. answered, "[m]e [sic] forgot." 2 RP at 39. And when asked whether Chucky had touched her anywhere, R.I.T. nodded her head but then stated "[m]e [sic] forgot again." 2 RP at 41. R.I.T. also testified that she recalled speaking with her mother and Detective Bergt about Chucky but did not remember what she had told them about him. Price did not cross-examine R.I.T.

¶10 In addition, Detective Bergt and Mann each testified regarding what R.I.T. had told them about Chucky sexually touching her, and Detective Bergt's taped interview with R.I.T. was played for the jury. Price did not object to this testimony or to the admission of the taped interview. The jury found Price guilty as charged on counts I-IV and not guilty on count V. He appeals.

## ANALYSIS

### I. Right of Confrontation

¶11 Price first contends that, because R.I.T. testified that she could not remember the alleged sexual acts or what

---

[2] Under RCW 9A.44.120, an out-of-court statement made by a child when under the age of 10 describing any act of sexual contact is admissible if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

she had told her mother and Detective Bergt, she did not "testify" so as to satisfy the confrontation clause, and the trial court improperly admitted her hearsay statements under RCW 9A.44.120. Br. of Appellant at 11. Additionally, he asserts that the admission of R.I.T.'s statements violated *Crawford*[3] because he had no prior opportunity to cross-examine her about these statements. In response, the State argues that, pursuant to *In re Personal Restraint of Grasso*, 151 Wn.2d 1, 84 P.3d 859 (2004) (plurality opinion), R.I.T. did "testif[y]" for confrontation clause purposes. Suppl. Br. of Resp't at 2.

¶12 First, Price did not raise this issue below. Nevertheless, the right to confront adverse witnesses is an issue of constitutional magnitude,[4] which we may consider for the first time on appeal. RAP 2.5(a); *State v. Clark*, 139 Wn.2d 152, 156, 985 P.2d 377 (1999).

¶13 Second, Price's arguments are contrary to recent case law. Price argues that under *State v. Rohrich*, 132 Wn.2d 472, 481, 939 P.2d 697 (1997), a child must "take[ ] the stand and describe[ ] the acts of sexual contact alleged in the hearsay" in order to properly "testif[y]" under RCW 9A.44.120(2)(a) and the confrontation clause. Br. of Appellant at 11. But in *Clark*, the court "clarified the limits" of *Rohrich* and held that the admission of hearsay statements does not violate the confrontation clause if: (1) the hearsay declarant is a witness at trial, (2) the declarant *is asked* about the event and the hearsay statements, and (3) the defendant is provided an opportunity for full cross-examination. *In re Pers. Restraint of Grasso*, 151 Wn.2d at 14-16; *Clark*, 139 Wn.2d at 159. *See also State v. Kilgore*, 107 Wn.

---

[3] In *Crawford*, the United States Supreme Court held that the admission of a witness's testimonial, out-of-court statements violates the confrontation clause when the witness does not testify at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness regarding the out-of-court statements. *Crawford*, 541 U.S. at 68.

[4] The sixth amendment to the United States Constitution and article I, section 22, of the Washington State Constitution, guarantee criminal defendants the right to confront and cross-examine witnesses against them.

App. 160, 174, 26 P.3d 308 (2001), *aff'd*, 147 Wn.2d 288, 53 P.3d 974 (2002).

¶14 *In re Pers. Restraint of Grasso* is instructive.[5] In that case, similar to the case at bar, the defendant was charged with sexually molesting his daughter, R.G., and she disclosed the abuse to a child interview specialist and a pediatric nurse practitioner. *In re Pers. Restraint of Grasso*, 151 Wn.2d at 6-7. At trial, R.G. took the stand and, when asked whether anyone had ever sexually touched her, she replied that she could not remember. *In re Pers. Restraint of Grasso*, 151 Wn.2d at 9. Additionally, she testified that she did not remember meeting with the child interview specialist. *In re Pers. Restraint of Grasso*, 151 Wn.2d at 9. The trial court admitted R.G.'s hearsay statements regarding the sexual act, and the defendant was convicted. *In re Pers. Restraint of Grasso*, 151 Wn.2d at 9-10.

¶15 Our Supreme Court upheld the conviction, holding that R.G.'s testimony satisfied the confrontation clause because she was asked about the event in question and her hearsay statements and because her response, "I can't remember," was "constitutionally acceptable." *In re Pers. Restraint of Grasso*, 151 Wn.2d at 17. The court also found that, because R.G. testified at trial regarding the events and hearsay statements, the defendant had a fair opportunity to cross-examine her. *In re Pers. Restraint of Grasso*, 151 Wn.2d at 18. Finally, the court noted that the *Rohrich* court was primarily concerned with the confrontation clause's "preference for live testimony" and it found that Rohrich's right to confrontation was violated because at trial the prosecutor did not question the child at all regarding the alleged acts of sexual abuse or her out-of-court statements. *In re Pers. Restraint of Grasso*, 151 Wn.2d at 16.

■ ¶16 Here, R.I.T. took the stand and testified at trial; the State properly asked her about the sexual contact, i.e.,

---

[5] Although we are not bound by a plurality opinion, we adopt the holding of *In re Personal Restraint of Grasso. In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004).

whether Price had touched her anywhere, and about her hearsay statements, i.e., whether she recalled speaking with her mother and Detective Bergt about Price; and R.I.T. provided a constitutionally valid response: "[m]e [sic] forgot." 2 RP at 39. Further, Price had the opportunity to fully cross-examine R.I.T. about her out-of-court statements or the underlying events. Thus, R.I.T.'s statements to both Mann and Detective Bergt were properly admitted under RCW 9A.44.120, and Price's right of confrontation was not violated. Moreover, *Crawford* has no bearing on this case as the confrontation clause is not implicated by the use of out-of-court statements when the declarant appears for cross-examination at a trial. *Crawford*, 541 U.S. at 60 n.9.

## II. Sufficiency of the Evidence

¶17 Price next asserts that the evidence is insufficient to support his conviction for first degree child molestation of R.I.T. First degree child molestation requires proof that the defendant has, or knowingly causes another person under the age of 18 to have, sexual contact with a person who is less than 12 years old and is not married to the perpetrator, and that the perpetrator is at least 36 months older than the victim. RCW 9A.44.083(1). "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party. RCW 9A.44.010(2). Price argues that there is insufficient evidence that he had contact with R.I.T. for purposes of sexual gratification. The record does not support this claim.

¶18 Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*,

119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact regarding a witness's credibility or conflicting testimony. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶19 Price points out that Division Three of this court has stated, "[I]n those cases in which the evidence shows *touching through clothing*, or *touching of intimate parts* of the body other than the primary erogenous areas, the courts have required some additional evidence of sexual gratification." *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991) (footnote omitted), *review denied*, 118 Wn.2d 1013 (1992); Br. of Appellant at 17. But in that case, the sexual contact was "fleeting" and "susceptible of innocent explanation." *Powell*, 62 Wn. App. at 918.

¶20 Here, the evidence shows that the touching was neither fleeting nor inadvertent. R.I.T. informed her mother that Price had not simply touched her but had rubbed her vagina. And even assuming that the rubbing took place over R.I.T.'s clothing, it was of sufficient duration to cause redness and swelling that was still visible after Mann had picked R.I.T. up from day care and taken her home. In conclusion, it was proper for the jury to infer that Price touched R.I.T. for purposes of sexual gratification, and sufficient evidence supports his conviction.

### III. Ineffective Assistance of Counsel

¶21 In addition, Price contends that he received ineffective assistance of counsel because his trial counsel failed to object to the admission of R.I.T.'s out-of-court statements and to properly renew his motion for severance before or at the close of the evidence. We consider each argument in turn.

¶22 In determining whether a defendant received constitutionally sufficient representation, we apply the two-part *Strickland* test. *Tilton*, 149 Wn.2d at 784; *Strickland v.*

*Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, Price must show that his trial counsel's performance was deficient based on the entire record. *Tilton,* 149 Wn.2d at 784. In making this determination, we presume that he received effective representation. *Tilton,* 149 Wn.2d at 784; *State v. Brett,* 126 Wn.2d 136, 198, 892 P.2d 29 (1995), *cert. denied,* 516 U.S. 1121 (1996). Representation is not deficient if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *State v. Hendrickson,* 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). Second, Price must show that the deficient performance prejudiced the defense. *Tilton,* 149 Wn.2d at 784. This showing is made when there is a reasonable probability that, but for trial counsel's errors, the result of the trial would have been different. *Hendrickson,* 129 Wn.2d at 78. To establish ineffective assistance of counsel, Price must meet both prongs of the test. *Hendrickson,* 129 Wn.2d at 78.

¶23 First, Price asserts that he was prejudiced by his trial counsel's failure to object to the admission of R.I.T.'s out-of-court statements to Mann and Detective Bergt and her taped statement. Because we hold that the trial court properly admitted this evidence under RCW 9A.44.120, Price's claim fails.

¶24 Next, Price argues that his trial counsel was ineffective because he failed to renew Price's motion to sever. If a defendant's pretrial motion for severance has been denied, he or she may renew the motion on the same ground before or at the close of all the evidence; severance is waived by failing to renew the motion. CrR 4.4(a)(2). Counsel's failure to make a motion does not support an ineffective assistance of counsel claim unless the defendant can show that the motion would properly have been granted. *State v. Jamison,* 105 Wn. App. 572, 591, 20 P.3d 1010, *review denied,* 144 Wn.2d 1018 (2001).

¶25 Because these cases are of the same or similar character, CrR 4.3(a)(1) authorizes joinder. Defendants seeking severance have the burden of demonstrating that a trial involving both counts would be so manifestly

prejudicial as to outweigh the concern for judicial economy. *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990). We review a trial court's refusal to sever charges for an abuse of discretion. *Bythrow*, 114 Wn.2d at 717. In making this determination, we consider the following " 'prejudice-mitigating factors' ": (1) the strength of the State's evidence on each count, (2) the clarity of the defenses as to each count, (3) whether the trial court properly instructed the jury to consider the evidence of each crime, and (4) the admissibility of evidence of the other crimes. *State v. Hernandez*, 58 Wn. App. 793, 798, 794 P.2d 1327 (1990) (quoting *State v. Watkins*, 53 Wn. App. 264, 269, 766 P.2d 484 (1989)), *review denied*, 117 Wn.2d 1011 (1991).

¶26 In *State v. Harris*, 36 Wn. App. 746, 752, 677 P.2d 202 (1984), and *State v. Ramirez*, 46 Wn. App. 223, 228, 730 P.2d 98 (1986), we found reversible error where the trial court denied a motion to sever when evidence of one count would be inadmissible in a separate trial of the other count. Both of these cases involved sexual offenses wherein we recognized that "the prejudice potential of prior acts is at its highest." *Ramirez*, 46 Wn. App. at 227. *See also Harris*, 36 Wn. App. at 752; *Bythrow*, 114 Wn.2d at 718.

¶27 But here, the evidence of the 1992 incidents involving T.D.J. would be admissible under ER 404(b) in a separate trial for the count involving R.I.T. At trial, Price presented evidence through Detective Bergt's testimony that any touching of R.I.T. was accidental. During his interview with Detective Bergt, Price informed her that on one occasion, he kneeled down so that R.I.T. could hug him and she hugged him so tightly he fell over on top of her. He further stated that when he fell, "one of his hands went in between her legs and that it may have hit her vagina accidentally." 2 RP at 106. Additionally, in closing argument, Price argued in reference to count I, "Maybe there was an accident, maybe there was inadvertent touching. I don't know." 3 RP (Dec. 11, 2002) at 231.

¶28 Under ER 404(b), evidence of other crimes is not admissible to prove the character of a person in order to

show action in conformity therewith. However, such evidence may be used to show that the act in question was not performed accidentally or by mistake. ER 404(b). Evidence of other misconduct offered by the State to demonstrate absence of mistake or accident must directly negate such a defense; it is not a material issue unless first raised by the defendant. *Ramirez*, 46 Wn. App. at 228. Because Price offered evidence and argued that any sexual contact he had with R.I.T. was accidental, the State was entitled to rebut this defense with evidence of the other counts tending to show that the touching was intentional. *Ramirez*, 46 Wn. App. at 228.

¶29 Moreover, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice where, as here, the trial court sufficiently instructed the jury regarding both crimes. The trial court instructed the jury that: "A separate crime is charged in each count. You must *decide each count separately*. Your *verdict on one count should not control your verdict on any other count*." Clerk's Papers (CP) at 87 (emphasis added). In addition, the trial court gave a limiting instruction, instructing the jury that it was to consider the testimony of each complaining witness only regarding the "charges related to that witness except for the purposes of deciding whether or not there existed a common scheme or plan[6] or *as it relates to any question of mistake or accident*," and that it was not to "consider this evidence to prove the character of the defendant in order to show that he acted in conformity therewith." CP at 84 (emphasis added).

¶30 In addition, the other "prejudice-mitigating" factors are present. Price concedes that the trial court properly instructed the jury to consider the counts involving each victim separately and that his defense in both cases was a general denial. But he argues that the evidence regarding both victims was not strong. We disagree.

---

[6] Because this court can find that evidence of the 1992 crimes was admissible to show the absence of mistake or accident, it need not address whether evidence of those crimes was also admissible under ER 404(b) to show a common scheme or plan.

¶31 Although R.I.T. testified that she could not remember whether Price had sexually touched her, testimony by Mann and Detective Bergt amply supported a finding that Price had intentionally touched her. R.I.T. told substantially the same story to both her mother and Detective Bergt; each witness's testimony corroborated the others at trial. Furthermore, there was physical evidence of the sexual contact—Mann testified that she observed redness and swelling on R.I.T.'s vagina. Likewise, the State's evidence on the counts involving T.D.J. was strong. T.D.J. testified that around eight or nine years ago, when he was four or five years old, he attended the Prices' day care. He further testified that while the other children were taking a nap, he would watch TV in the back room, and on three or four occasions, Price came into the back room, stuck his hands down T.D.J.'s pants, and touched T.D.J.'s penis. T.D.J. stated that Price had told him not to tell anyone but he told his mother after learning of the charges involving R.I.T. In conclusion, Price has not demonstrated any prejudice resulting from the trial court's failure to sever and fails to show that that a third motion to sever made before or at the close of all the evidence would have been properly granted; his claim of ineffective assistance fails.

IV. Statement of Additional Grounds

¶32 Finally, Price has filed pro se a statement of additional grounds[7] (SAG). He raises several claims, including sufficiency of the evidence, ineffective assistance of counsel, denial of his right to testify, and trial court error in refusing to sever the count involving R.I.T. from the counts involving T.D.J. But his claims are either based on evidence outside the record, are mere factual or credibility questions, or fail to inform the court of the nature and occurrence of the alleged errors. *See In re Pers. Restraint of Waggy*, 111 Wn. App. 511, 518, 45 P.3d 1103 (2002) (appellate courts will not consider evidence outside the trial record; factual

---

[7] RAP 10.10(a).

questions cannot be considered on appeal); *Camarillo*, 115 Wn.2d at 71 (credibility determinations are for the trier of fact); RAP 10.10(c). Moreover, Price provides absolutely no citation to the record; although citations are not required, we are "not obligated to search the record in support of claims made in a defendant/appellant's statement of additional grounds for review." RAP 10.10(c). Thus, his claims fail.

¶33 Affirmed.

HOUGHTON, J., concurs.

¶34 ARMSTRONG, J., (dissenting) — I respectfully dissent. The confrontation clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST., amend. VI. This right is secured by cross-examination, the " 'greatest legal engine ever invented for the discovery of truth.' " *California v. Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) (quoting 5 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1367 (3d ed. 1940)).

¶35 I agree that the admission of a child's hearsay statements in a sexual abuse case does not violate the confrontation clause if the child (1) is a witness at trial, (2) is asked about the event and the hearsay statement, and (3) the defendant is provided an opportunity to fully cross-examine the child. *State v. Clark*, 139 Wn.2d 152, 159, 985 P.2d 377 (1999); *see also United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988); Majority op. at 199. But I disagree that Price had this opportunity.

¶36 In *In re Personal Restraint of Grasso*, 151 Wn.2d 1, 9-10, 84 P.3d 859 (2004) (plurality opinion), the child witness testified that she did not remember if she was abused, but she also testified that she told the truth to a nurse who related her hearsay statements about the alleged abuse. A plurality of our Supreme Court held that the "I can't remember" answers were "a constitutionally acceptable response" for confronta-

tion clause purposes and found that Grasso had an adequate opportunity for cross-examination because the alleged victim testified at trial. *Grasso*, 151 Wn.2d at 17. But as a plurality opinion, *Grasso* has only limited precedential value and is not binding. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004) (citing *State v. Gonzalez*, 77 Wn. App. 479, 486, 891 P.2d 743 (1995)).

¶37 Before *Grasso*, the opportunity to cross-examine meant "more than affording the defendant the opportunity to hail the witness to court for examination[;] [i]t require[d] the State to elicit the damaging testimony from the witness so the defendant may cross-examine if he so chooses." *State v. Rohrich*, 132 Wn.2d 472, 478, 939 P.2d 697 (1997) (footnote omitted). In *Rohrich*, the State called the child witness but asked her only innocuous questions; it did not ask about any alleged abuse. *Rohrich*, 132 Wn.2d at 474. The jury convicted Rohrich on the basis of the child's hearsay statements to various adults. *Rohrich*, 132 Wn.2d at 474-75. The court reversed, holding that " 'testifies,' as used in [the child hearsay statute] means the child takes the stand and describes the acts of sexual contact alleged in the hearsay." *Rohrich*, 132 Wn.2d at 481.

¶38 In *Clark*, the child witness denied she was sexually abused, acknowledged her hearsay statements detailing the abuse, and said they were lies. *Clark*, 139 Wn.2d at 155. The court affirmed the convictions, distinguishing *Rohrich* on the basis that there, the State avoided all questioning about the alleged abuse. Clark, however, had the opportunity to cross-examine because the victim was asked about the abuse and her hearsay statements. *Clark*, 139 Wn.2d at 161.

¶39 Moreover, the persuasiveness of *Grasso* and *Clark* are further diminished by the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), which held that the confrontation clause bars testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him. Although R.I.T. and the

child witnesses in *Grasso* and *Clark* testified at trial, *Crawford* made clear the central importance of cross-examination in criminal trials—"[the confrontation clause] commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61.

¶40 Here, R.I.T. responded "[m]e [sic] forgot" when asked if Price touched her and did not remember what she told her mother and Detective Bergt. 2 RP at 39, 41. Although the State technically asked about the alleged abuse and her hearsay statements, R.I.T.'s responses provided no information on which she could be effectively cross-examined. Unlike the victim in *Clark*, R.I.T. did not say that her statements were lies; she gave no information at all. *See Clark*, 139 Wn.2d at 155. Accordingly, she was insulated from any meaningful cross-examination on bias, motive, or her ability to accurately relate what happened. In fact, cross-examining R.I.T. would likely produce testimony incriminating Price; this would violate a different Sixth Amendment right—effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). For these reasons, I respectfully dissent.

Review granted at 156 Wn.2d 1005 (2006).