IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | |
| | ) | No. 34316-2-III |
| L.M.R. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, J. — The father of L.M.R. appeals the trial court's entry of an order of dependency, challenging the sufficiency of the evidence to support the trial court's findings that L.M.R. had been abused or neglected within the meaning of RCW 13.34.030(6)(b) and had no parent capable of adequately caring for him, creating a danger of substantial damage within the meaning of RCW 13.34.030(6)(c). Because there is sufficient evidence to support physical abuse and neglect implicating subsection (6)(b), and a danger of substantial damage to L.M.R.'s psychological and physical development implicating subsection (6)(c), we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Ten-year-old L.M.R. lived with his mother for the first five years of his life, but in 2011 moved in with his father and lived with him thereafter. Other adults are mentioned

in this decision, but all references to "the mother" and "the father" are to L.M.R.'s natural parents.

In April 2015, the Department of Social and Health Services (DSHS) removed L.M.R. from the father's care and filed a petition to declare him dependent. L.M.R. had reported to his counselor that his father physically abused him. DSHS personnel were also concerned about poor housing conditions that posed a safety concern. Shortly after the petition was filed, the family moved from Wenatchee to Ritzville and L.M.R. recanted most of his statements of abuse. The court dismissed the case.[1] L.M.R. was returned to his father's care by June 2015.

Seven months later, in January 2016, DSHS filed the instant dependency petition. The petition followed a report by a foster parent that L.M.R.'s half brother, Dv., had been sexually inappropriate with her foster son, including by slapping him in the groin. Brandy West, the DSHS employee assigned to investigate the report, spoke with Dv.'s and L.M.R.'s mother, telling her that there was a sexual abuse report involving Dv. being inappropriate with another child. In response, the mother, who had not been told the nature of Dv.'s conduct, stated she was not surprised because L.M.R.'s father "has been

---

[1] The court's order of dependency in this proceeding noted that it "had no basis on which to determine why the previous dependency was dismissed after hearing." Clerk's Papers (CP) at 116.

2

slapping the boys in the groin for a long time." Report of Proceedings (RP) at 49.[2]

Although Dv. had never lived with L.M.R.'s father, it appears that the two had spent time together because L.M.R.'s father is the brother of Dv.'s father.

Dv. also told investigators that his conduct toward the foster child was something he had learned at home, but he refused to answer further questions.

A dependency hearing in this case was held in March 2016. DSHS presented testimony from the mother and Ms. West. The mother testified that L.M.R.'s father and his uncle (the uncle who is the father of Dv. and her three other children) had both raped or "forced [themselves]" on her. RP at 15. She testified that both men were mentally and emotionally abusive to her.

She testified that L.M.R.'s father was not a good father to him. Though the mother did not live with L.M.R.'s father after their son was born, she would visit occasionally. During these visits, the father would yell at, hit, bully, and degrade L.M.R. She also testified that she had seen the father "constantly" slap L.M.R. in the groin, using "all his weight." RP at 32. She testified the father "thought it was a game" but that L.M.R. did not, "'cause he would try to stop him. He's like, 'Ow, don't do that,' and when he pushes his hand away he'll pop him in the face." RP at 14. She testified the father had been slapping L.M.R. in the groin since L.M.R. was five years old. The last

---

[2] Unless otherwise stated, all citations to the Report of Proceedings (RP) are to the volume reporting the March 28, 2016 fact-finding hearing.

time she saw the father slap L.M.R. in the groin was the last time she saw the father: December 2014. She finally testified that during that last visit, she saw the father corner L.M.R. in his bedroom and both threaten and hit him when L.M.R. refused to take a shower. She admitted she had never seen any marks or bruises on L.M.R.

Ms. West testified to the events that led her to file the petition alleging L.M.R. to be dependent. In addition to recounting the information obtained from the foster parent, Dv., and the mother, she testified that she had reviewed the father's history and found that 10 findings of abuse or neglect had been entered against him over a period of 10 years. She testified that such a long pattern of abuse and neglect, despite services having been offered, caused her substantial concern that the pattern would continue. On that basis, she removed L.M.R. from the home. She testified that at the time she removed L.M.R. from the home, he was "fine," in "pretty good" physical health, with no signs of abuse. RP 53, 74.

Ms. West also testified to clutter and sanitation concerns about the father's home and the mother testified the father's prior home had been filthy and unsafe. Because the trial court's dependency order explicitly "place[d] no weight on the condition of the home" we do not address it further. Clerk's Papers (CP) at 116.

At the conclusion of the hearing, the trial court found that DSHS had established

that L.M.R. was dependent.[3] In written findings and conclusions entered thereafter, it found two statutory bases for its finding of dependency: RCW 13.34.030(6)(b), addressing "abuse or neglect," and 13.34.030(6)(c), addressing "no capable parent." It ordered the father to successfully complete a psychosexual evaluation, follow all recommendations, and participate in family counseling. It also ordered four hours of supervised visitation a week between the father and L.M.R. and ordered DSHS to provide the father with gas vouchers to assist with visitation and services.

In addition to its ultimate findings, the court entered several handwritten findings, including the following:

3. Allegations made after dismissal of previous dependency petition raise serious concerns about the safety of the child in [the father's] care.
4. The court finds, based on testimony from [the mother], that it is more probable than not that [L.M.R.] was being sexually abused or manipulated by [his father] or [his uncle] with [the father's] complicity. Court finds [the mother's] account of "the slapping game" to be credible and troubling to the court.

CP at 116.

The father appeals.

## ANALYSIS

"Parents have a fundamental liberty interest in the care and welfare of their minor children." *In re Dependency of Schermer*, 161 Wn.2d 927, 941, 169 P.3d 452 (2007).

---

[3] L.M.R.'s mother stipulated to the dependency.

"However, the State has an interest in protecting the physical, mental, and emotional health of children." *Id.* Dependency proceedings are designed to balance these interests, protecting children from abuse and neglect while helping parents alleviate problems, reuniting families if appropriate. *In re Interest of J.F.*, 109 Wn. App. 718, 728, 37 P.3d 1227 (2001); *In re Welfare of Key*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). Dependencies are preliminary proceedings that do not necessarily result in termination of the parent's rights. *Id.*; *In re Dependency of T.L.G.*, 126 Wn. App. 181, 203, 108 P.3d 156 (2005).

The father's only assignments of error are to the sufficiency of the evidence to support the court's findings that L.M.R. was dependent under RCW 13.34.030(6)(b) and (c). In reviewing a trial court's determination that a child is dependent, we examine whether substantial evidence supports the trial court's findings of fact and whether those findings of fact support the conclusions of law. *In re Dependency of C.M.*, 118 Wn. App. 643, 649, 78 P.3d 191 (2003). Evidence is substantial if, when viewed in the light most favorable to the prevailing party, a rational trier of fact could find the fact by the applicable standard of proof: preponderance of the evidence. *In re Dependency of E.L.F.*, 117 Wn. App. 241, 245, 70 P.3d 163 (2003). In deference to the trial court's advantage in having the witnesses before it, we do not reweigh the evidence or evaluate the witnesses' credibility. *Id.* "Unchallenged findings are treated as verities on appeal." *In re Mahaney*, 146 Wn.2d 878, 895, 51 P.3d 776 (2002).

6

We address, in turn, the evidence supporting each of the two statutory bases on which the trial court found L.M.R. dependent.

### *1. RCW 13.34.030(6)(b) – Abuse or neglect*

RCW 13.34.030(6)(b) provides that a child may be declared dependent if he is abused or neglected as defined in chapter 26.44 RCW. That statute provides:

> "Abuse or neglect" means sexual abuse . . . or injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety . . . ; or the negligent treatment or maltreatment of a child by a person responsible for or providing care to the child.

RCW 26.44.020(1). The statute does not further define sexual abuse, but the Washington Administrative Code (WAC) provides the following definition:

> Sexual abuse means . . . [t]he intentional touching, either directly or through the clothing, of the sexual or other intimate parts of a child . . . for the purpose of gratifying the sexual desire of the person touching the child, the child, or a third party.

WAC 388-15-009(3). The father argues on appeal that the trial court's finding of abuse under RCW 13.34.030(6)(b) is unsubstantiated because no evidence demonstrates that he slapped L.M.R. in the groin to satisfy a sexual desire. In the trial court, he claimed ignorance of any groin slapping game, saying he'd "never even heard it before," and that he'd never hit T.M.R. in the groin. RP at 81.

In its oral ruling, the trial court stated it did not find the father's denial of the groin slapping to be credible. In its written findings, the court characterized the mother's

7

account of "'the slapping game'" as credible and troubling, and characterized the father as sexually abusive or sexually manipulative. CP at 116.

While Washington courts have discussed sexual abuse in the dependency context, they do not appear to have addressed the narrower issue of what is required to show that a touching was done for the purpose of gratifying sexual desire—perhaps because such a purpose is often strongly suggested by the nature of the conduct. *See, e.g., In re Dependency of S.S.*, 61 Wn. App. 488, 814 P.2d 204 (1991) (finding sufficient evidence of sexual abuse where the child made statements that her father had oral, anal, and vaginal sex with her); *In re Dependency of M.P.*, 76 Wn. App. 87, 90-91, 882 P.2d 1180, (1994) (finding sufficient evidence where the child described her father raping her mother in front of her and masturbating on top of the child).

Evidence showing a sexual gratification purpose is discussed in the criminal context under RCW 9A.44.010, which defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Direct evidence of sexual gratification is not required to establish guilt, but the evidence must support an inference of sexual gratification. *See State v. Powell*, 62 Wn. App. 914, 917-18, 816 P.2d 86 (1991); *State v. Price*, 127 Wn. App. 193, 202, 110 P.3d 1171 (2005), *aff'd*, 158 Wn.2d 630, 146 P.3d 1183 (2006). Among circumstances suggesting that a defendant's contact was not for the purpose of sexual gratification is where the contact was fleeting or

8

susceptible of innocent explanation. *Powell*, 62 Wn. App. at 917-18; *accord Price*, 127 Wn. App. at 202. Additional evidence of a sexual gratification purpose has been required where the touching occurs through clothing, or where the touching is "of intimate parts of the body other than the primary erogenous areas." *Powell*, 62 Wn. App. at 917 (citing cases).

The evaluation of evidence of a sexual gratification purpose in the criminal cases is instructive but not altogether helpful, because in a dependency the standard of proof is much lower and the trial court could more readily infer such a purpose. It might have inferred such a purpose here because the conduct did not stop despite L.M.R.'s objections, and because the father denied engaging in the conduct at all, which might suggest consciousness of guilt. Still, the mother testified that the father "thought it was a game"—albeit without explaining the basis for her belief. RP at 14. We choose not to resolve the relatively close question of whether the evidence is sufficient to establish sexual abuse because it clearly establishes harm to L.M.R.'s health or welfare and negligent treatment or maltreatment, either of which is sufficient. In its oral ruling and written findings, the trial court found credible the mother's report that the father had, for years, been slapping L.M.R. forcefully in the groin and "popping" him in the face when he resisted. In considering and concluding that this conduct constitutes a type of abuse or neglect other than sexual abuse, we are not reweighing evidence but merely affirming the

9

trial court on a different ground supported by the record. *See Hendrickson v. King County*, 101 Wn. App. 258, 266, 2 P.3d 1006 (2000).

Behavior that injures a child "under circumstances which cause harm to the child's health, welfare, or safety" is prohibited by RCW 13.34.030(6)(b). RCW 26.44.020(1). Physical abuse therefore qualifies. WAC 388-15-009(1)(b) provides a definition for physical abuse that includes, but is not limited to "[s]triking a child with a closed fist." The evidence found credible by the trial court is that the father has slapped L.M.R. in the groin repeatedly, "with all his weight," from 2011 to at least late 2014. It also established that when L.M.R. resisted, the father would "pop" him in the face. If the "pop" was a punch, it constitutes physical abuse under WAC 388-15-009(1)(b). In the father-son altercation over taking a shower, the mother testified the father "started threatening [L.M.R.] and he started hitting him." RP at 17.

And punishment for resisting groin slapping, combined with the groin slapping itself, certainly constitutes the nonaccidental physical mistreatment of a child. In addition to inflicting pain and psychological harm, the groin slapping of a young boy with a father's full weight could conceivably harm L.M.R.'s reproductive organs. There is sufficient evidence to uphold the trial court's finding of dependency under RCW 13.34.030(6)(b) for physical abuse.

10

Finally, DSHS contends the evidence is sufficient to support a finding of neglect. To demonstrate neglect, the Department must show negligent treatment or maltreatment, which RCW 26.44.020(16) defines as follows:

"Negligent treatment or maltreatment" means an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety.

WAC 388-15-009(5)(b) further provides that negligent treatment or maltreatment includes actions "which create a substantial risk of injury to the physical, emotional, and/or cognitive development of a child." "A child does not have to suffer actual damage or physical or emotional harm to be in circumstances which create a clear and present danger to the child's health, welfare, or safety." WAC 388-15-009(5).

Viewed in the light most favorable to the State, the evidence of the father's history of reported abuse; the mother's testimony to his bullying behavior and physical punishment of L.M.R.; and the behavior, from the time L.M.R. was five years old, of slapping him in the groin with all the father's weight and "popping" him in the face if he resisted is enough to establish a clear and present danger to L.M.R.'s health, welfare, and safety should he remain in the father's care. The fact that the record does not contain evidence that these actions occurred after December 2014 does not preclude that finding.

11

*1. RCW 13.34.030(6)(c) – No capable parent*

RCW 13.34.030(6)(c) provides that a child may be found dependent if there is "no parent . . . capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." There are no specific factors a court must consider when determining whether a parent is capable of parenting under RCW 13.34.030(6)(c); rather, the inquiry is highly fact specific. *See Schermer*, 161 Wn.2d at 951-52.

Dependencies based on RCW 13.34.030(6)(c) do not require a finding of parental unfitness; the provision allows for "consideration of both a child's special needs and any limitations or other circumstances which affect a parent's ability to respond to those needs." *Schermer*, 161 Wn.2d at 944. Nor does a dependency under subsection 6(c) require proof of actual harm; it only requires a danger of harm, and the trial court has broad discretion to consider all the facts and evaluate the risk of harm. *Id.* at 951-52. That includes consideration of parenting history. *See In re Dependency of J.C.*, 130 Wn.2d 418, 428, 924 P.2d 21 (1996) (Washington courts may consider a parent's history as a factor in weighing a parent's current fitness in termination proceedings.).

In challenging the trial court's finding of dependency under subsection (6)(c), the father focuses on DSHS's failure to show a "clear and present danger" to L.M.R., which he contends is required, citing *In re Dependency of M.S.D.*, 144 Wn. App. 468, 481-82,

12

182 P.3d 978 (2008) and *J.F.*, 109 Wn. App. at 731. But both cases involve findings of neglect under the "abuse or neglect" basis presently provided by subsection (6)(b), which—by applying definitions provided in chapter 26.44 RCW—incorporates the concept of a disregard of consequences constituting "a clear and present danger to a child's health, welfare, or safety." RCW 26.44.020(1), (16).[4] They use the "clear and present danger" language in that context, not in the context of discussing the "no capable parent" basis for finding dependency.

Beyond that, the father emphasizes the fact that L.M.R.'s mother never noticed bruises or marks on L.M.R. and that he appeared to be "fine," with no signs of abuse when DSHS removed him from the home. But a finding of no capable parent requires a finding of danger of harm, not actual harm. The same evidence that supports the "abuse or neglect" finding supports a finding of danger of substantial damage to L.M.R.'s psychological and physical development.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

---

[4] When *M.S.D.* was decided in 2008, the "abuse or neglect" basis was provided by former RCW 13.34.030(5)(b) (2003). When *J.F.* was decided in 2001, it was provided by former RCW 13.34.030(5)(b) (2000).

No. 34316-2-III
*In re Parental Rights to L.M.R.*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, J.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.