# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50390-5-II |
| Respondent, | |
| v. | |
| SARAH MARIE BROWNING, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Sarah M. Browning appeals her residential burglary and bail jumping convictions. She contends (1) the burden of proof on an essential element of bail jumping was wrongly shifted to the defense, (2) the trial court violated her CrR 3.3 time for trial rights when granting defense counsel's motion to withdraw, (3) sufficient evidence does not support her residential burglary conviction, and (4) ineffective assistance of counsel for failing to object to impeachment evidence. In her statement of additional grounds for review (SAG), Browning argues the sentencing court miscalculated her offender score. We affirm.

FACTS

A.    FACTUAL BACKGROUND

Shirley Cuccia, previously known as Shirley Lewis, lived in a house at 321 Charlotte Avenue in Bremerton.  After Cuccia bought the house, she and her husband reconciled. Nevertheless, she would go back and forth between the Charlotte Avenue home and the family home.

Cuccia had plants, personal items, and boxes of items belonging to her children and grandmother in the Charlotte Avenue house.  She took care of the yard and upkeep of the home. The power was on.  And the water and plumbing worked.  Cuccia's identification listed the Charlotte Avenue address as Cuccia's address.

One morning, Cuccia went to the Charlotte Avenue home to work on a water main leak and install storage shelves.  She returned to her other home to make dinner for her family and then returned to the Charlotte Avenue home later that night.

When Cuccia returned to the Charlotte Avenue house, the gate was open, which was not how she left it, and the screen to one of the bedroom windows was removed.  Cuccia called 911. Cuccia then went inside the home.  As she went upstairs, Cuccia saw Browning coming out of Cuccia's bedroom.  Cuccia did not know Browning.  Browning began throwing items out of her backpack at Cuccia and then ran out of the house.

Kitsap County Sheriff's Deputy Joseph Hedstrom was dispatched to the residence.  As he neared the home, he saw Browning running down the street.  Deputy Hedstrom stopped Browning.

Browning told Deputy Hedstrom that she was being set up by "Vicki Lewis." Verbatim Report of Proceedings (VRP) (May 17, 2017) at 91. She said she was in the home to help Lewis move boxes.

Kitsap County Sheriff's Deputy Donald Moszkowicz arrived and in a search incident to arrest, he found a small jewelry box and various pieces of jewelry in Browning's pockets. Inside the jewelry box was Cuccia's class ring with her initials.

B.     PROCEDURAL BACKGROUND

On December 3, 2015, the State charged Browning with residential burglary with a special allegation that the victim was present during the burglary. The trial court released Browning on bail pending trial. The trial court's pre-trial release order required Browning to appear at an August 17, 2016, review hearing and a November 30, 2016, omnibus hearing. Browning did not attend either hearing. The State also learned that Browning had contacted the victim. On December 13, 2016, the State additionally charged Browning with two counts of bail jumping and witness tampering. A new omnibus hearing was set for January 12, 2017.

On January 12, 2017, defense counsel moved for a continuance and to reset the omnibus hearing and trial dates. He explained that as a result of the amended information, he needed more time to prepare a *Knapstad*[1] motion. The State did not object. The trial court granted the continuance. Browning refused to sign the continuance order. Trial was set for March 6, 2017.

On March 2, 2017, defense counsel filed a motion to withdraw. He argued that "this would be . . . mutual between myself and my client, that communication has been irretrievably broken."

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 357, 729 P.2d 48 (1986) (a motion to dismiss when the undisputed facts do not establish a prima facie case of guilt).

VRP (March 2, 2017) at 6. The trial court inquired about the breakdown in communication, and defense counsel replied, "There have been incidents which have now — prevent me from adequately preparing for trial because of new things that have been divulged to me by Ms. Browning." VRP (March 2, 2017) at 7. Defense counsel stated he would not be prepared to go to trial the following week.

The trial court granted the motion to withdraw and advised Browning that she had now "gone through" two attorneys[2] and she did not get "to pick and choose" because they did not "have an exhaustive list." VRP (March 2, 2017) at 12. Defense counsel then advised the trial court that Browning was concerned about her time for trial rights. The trial court responded that Browning "ask[ed] for new counsel" and the trial court was "not going to make another attorney be ready by Monday." VRP (March 2, 2017) at 13-14.

The State ultimately dismissed one of the bail jumping charges (relating to the August 17, 2016, hearing) and the witness tampering charge. Browning went to trial on the residential burglary and bail jumping charges.

Prior to trial, the State moved to introduce 14 of Browning's prior burglary, theft, and possession of stolen property convictions under ER 609. The State argued it would go to Browning's credibility if she testified. Defense counsel did not object. The trial court granted the motion.

---

[2] The details of the withdrawal of Browning's first attorney are not in our record, but the trial court inquired at the March 2, 2017 hearing if this was Browning's first attorney. The State responded, "No . . . this will be the second attorney that Ms. Browning has had relieved of duty." VRP (March 2, 2017) at 11.

C.      TRIAL AND SENTENCING

Trial commenced on May 15, 2017. During trial, Deputy Hedstrom testified that in his opinion, the house looked like someone lived there and that he has "seen worse." VRP (May 17, 2017) at 127. He also testified there were functional lights in the house.

After the State rested, Browning testified. During her testimony she admitted that she had gone into Cuccia's house without permission. However, she denied taking Cuccia's property and stated that she only entered the home to get out of the cold. Browning also testified that she was unable to attend the November 30, 2017, omnibus hearing because she was sick and in the hospital.

During Browning's testimony, the State asked her about her "fairly significant theft history." VRP (May 18, 2017) at 269. Browning admitted to multiple prior theft convictions and one burglary conviction from 2010.

The trial court instructed the jury, without objection, that

> [i]t is a defense to a charge of bail jumping that:
>
> (1)     uncontrollable circumstances prevented the defendant from personally appearing in court; and
> (2)     the defendant did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear; and
> (3)     the defendant appeared as soon as such circumstances ceased to exist.
>
> For the purposes of this defense, an uncontrollable circumstance is an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of man such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.
>
> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true.

5

> If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 144. The trial court also instructed the jury that evidence of prior convictions may "only" be considered "in deciding what weight or credibility to give to the defendant's testimony." CP at 124.

A jury found Browning guilty as charged. The sentencing court calculated Browning's offender score as an eight on the bail jumping conviction and a nine on the residential burglary conviction. Browning agreed to a 100-month aggravated exceptional sentence as part of a plea deal to have other unrelated charges dropped. The sentencing court sentenced Browning to 100 months on the residential burglary conviction and 57 months on the bail jumping conviction to be served concurrently.

Browning appeals.

## ANALYSIS

A.    BAIL JUMPING

Browning first contends the trial court violated her due process rights because the bail jumping defense jury instruction relieved the State of its burden of proof of an essential element of bail jumping. Specifically, she argues that the State must prove she was capable of appearing instead of her having to prove she was incapable of appearing as an affirmative defense. We disagree.

Due process requires the State to prove all elements of the crime beyond a reasonable doubt. *State v. W.R.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014). Jury instructions are appropriate if they allow the parties to argue their theory of the case, do not mislead the jury, and do not

misstate the law. *State v. Stevens*, 158 Wn.2d 304, 308, 143 P.3d 817 (2006). We review de novo whether the jury instructions adequately state the applicable law. *Id.*

The essential elements of bail jumping are that the defendant "(1) was held for, charged with, or convicted of a particular crime; (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and, (3) knowingly failed to appear as required." *State v. Williams*, 162 Wn.2d 177, 183-84, 170 P.3d 30 (2007) (emphasis omitted); RCW 9A.76.170(1). Under RCW 9A.76.170(2),

> It is an affirmative defense to a prosecution [for bail jumping] that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist.

The trial court instructed the jury on the affirmative defense to a bail jumping charge.

Here, no legal authority directly supports Browning's argument. However, *State v. Deer*, 175 Wn.2d 725, 287 P.3d 539 (2012), *cert. denied*, 568 U.S. 1148 (2013), is instructive. There, our Supreme Court considered whether the State must prove volition as an element of rape of a child in the third degree. Deer argued that once she produced evidence of a lack of a voluntary action, the State had the burden of proving volition beyond a reasonable doubt. *Id.* at 731-32. Deer claimed she was sleeping during several acts of intercourse and, therefore, could not be guilty of rape. The Court held that Deer's lack of volition claim was an affirmative defense that she was required to prove by a preponderance of the evidence:

> We must reject Deer's contention that the State is required to prove as an element of child rape that she was awake during the alleged acts. While she is entitled to argue a lack of conscious action, her claim is properly treated as an affirmative defense, much like claims of involuntary intoxication, insanity, or unwitting possession

*Id.* at 733.

Browning's contention is similar to Deer's. Browning argues that the State was required to prove that she was capable of appearing at the required time. She relies on *Carter v. United States*, 530 U.S. 255, 257, 120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000), to argue that every crime must have an actus reus that the State must prove. However, the *Deer* court recognized there is a divergence between the importance of actus reus in "criminal law philosophy" and its relevance in practice, and explained that

> [t]he law has "deviated" for good reason; theory and practice sometimes diverge. Breaking criminal responsibility into its component parts of actus reus and mens rea is fine in theory, but requiring the prosecution to establish volition—here consciousness—as an "element" in the strict sense is unreasonable.

*Deer*, 175 Wn.2d at 732-33.

The defense to bail jumping is very similar to the lack of volition defense noted in *Deer* in that the excuse cannot have been caused by the defendant's own acts. As the *Deer* court observed, the defendant generally bears the burden of proving an affirmative defense by a preponderance of the evidence. *Id.* at 734; s*ee also State v. Lawson*, 37 Wn. App. 539, 542, 681 P.2d 867 (1984) ("It is within the defendant's knowledge and ability to establish the existence of one of the statutory exceptions to the charge of unlawful consumption. . . . It is not an 'undue hardship' to require the defendant to come forward with evidence of a defense, if one exists."). The sole exception is when a defense "negates" an element of the charged offense, in which case due process requires the State to bear the burden of disproving the defense. *Deer*, 175 Wn.2d at 734 (citing *State v. Lively*, 130 Wn.2d 1, 10-11, 921 P.2d 1035 (1996)).

Bail jumping requires the State to prove that the defendant knew that she was required to appear. *State v. Fredrick*, 123 Wn. App. 347, 353, 97 P.3d 47 (2004). The affirmative defense does not negate that element. *Id.* To the contrary, the failure to appear element is essentially a strict liability element because the State only has to prove the defendant's absence, not the reason. *State v. Carver*, 122 Wn. App. 300, 306, 93 P.3d 947 (2004). Moreover, the *Deer* court went on to explain that "the reason for putting the burden of proof on the defendant in such cases is 'because generally, affirmative defenses are uniquely within the defendant's knowledge and ability to establish.' " 175 Wn.2d at 737 (quoting *State v. Riker*, 123 Wn.2d 351, 367, 869 P.2d 43 (1994)).

Browning contends she was not able to attend because she was in the hospital. But she did not present any documentation for her alleged hospital stay. This is exactly the type of evidence in the "unique[]" control of the defendant that justifies placing the burden on the defense. *Deer*, 174 Wn.2d at 737.

The trial court's affirmative defense instruction did not relieve the State of its burden to prove the essential elements for a bail jumping charge. Accordingly, Browning's due process challenge fails.

B.      TIME FOR TRIAL RIGHT

Browning next contends the trial court erred by granting defense counsel's motion to withdraw and that this error violated her CrR 3.3 time for trial rights. We disagree.

We review a trial court's ruling on an attorney's motion to withdraw for abuse of discretion. *State v. Stark*, 48 Wn. App. 245, 252-53, 738 P.2d 684, *review denied*, 109 Wn.2d 1003 (1987). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *State*

9

*v. Nguyen*, 131 Wn. App. 815, 819, 129 P.3d 821 (2006). We review applications of the CrR 3.3 time for trial rules de novo. *State v. Kindsvogel*, 149 Wn.2d 477, 480, 69 P.3d 870 (2003).

Browning alleges the trial court abused its discretion by not inquiring more regarding the relationship between her and defense counsel before granting counsel's motion to withdraw. However, Browning did not object to Defense counsel's withdrawal below; rather, Browning joined in the motion. Defense counsel stated that the motion was "mutual between myself and my client, that communication has been irretrievably broken." VRP (March 2, 2017) at 6. Thus, the trial court concluded that there was no time for trial violation because Browning "ask[ed] for new counsel" and the trial court was "not going to make another attorney be ready for trial on Monday." VRP (March 2, 2017) at 13-14.

Based on the record, Browning acquiesced in the motion for a new counsel, which would necessitate additional time to prepare for trial. There was no abuse of discretion in granting the motion. Moreover, a time for trial waiver " 'forced solely by defense counsel's conduct, and not in any way attributable to the State or the court, is not a violation of Criminal Rule 3.3, and does not justify a dismissal of charges.' " *State v. Vicuna*, 119 Wn. App. 26, 34, 79 P.3d 1 (2003) (quoting *State v. Thomas*, 95 Wn. App. 730, 739, 976 P.2d 1264 (1999), *review denied*, 139 Wn.2d 1017 (2000)), *review denied*, 152 Wn.2d 1008 (2004). "Requiring dismissal in such situations would inappropriately place the State in an adversarial position against withdrawal to protect its interest in preventing [time for trial] violations." *Vicuna*, 119 Wn. App. at 34-35. Thus, given the facts below, Browning's time for trial violation challenge based on the trial court allowing defense counsel to withdraw fails.

C.     SUFFICIENCY OF EVIDENCE FOR RESIDENTIAL BURGLARY

Browning next contends sufficient evidence does not exist to support her residential burglary conviction, which violates her constitutional due process right to have every element proved beyond a reasonable doubt. Browning contends the State's evidence was insufficient to prove that she entered a dwelling, which is an essential element of residential burglary under RCW 9A.52.025(1). We disagree.

As previously discussed, in a criminal prosecution, due process requires the State to prove every element of the charged crime beyond a reasonable doubt. *W.R.*, 181 Wn.2d at 762. Evidence is sufficient if, when viewed in the light most favorable to the State, any rational trier of fact could find that all of the crime's essential elements were proven beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). When challenging the evidence as insufficient, the defendant admits the truth of the State's evidence and all reasonable inferences that arise therefrom. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). Circumstantial and direct evidence are equally reliable. *Id.* at 266. Because it is the jury's responsibility to resolve credibility issues and determine the weight of the evidence, we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To prove residential burglary, the State had to prove beyond a reasonable doubt that Browning entered or remained in a "dwelling." RCW 9A.52.025(1). A "dwelling" is "any building or structure . . . which is used or ordinarily used by a person for lodging." RCW 9A.04.110(7). Browning argues the home was not a dwelling because it was not used for lodging.

11

However, whether a home is used for lodging is but one factor determining "dwelling." *See State v. Hall*, 6 Wn. App. 2d 237, 430 P.3d 289 (2018). The factors considered in determining "dwelling" include:

> (1) [W]hether the occupant deemed the house his or her abode and treated it as such, (2) whether the house was furnished and rented out periodically, (3) whether the occupant intended to return, (4) whether the house usually was occupied by someone lodging there at night, (5) whether the house was maintained as a dwelling, and (6) how long the house had been vacant.

*Id* at 240. (citing *State v. McDonald*, 123 Wn. App. 85, 91 n.18, 96 P.3d 468 (2004)).

Here, Cuccia testified that after she and her husband reconciled she would go back and forth between the Charlotte Avenue home and the family home. She had plants, personal items, and boxes of items belonging to her children and grandmother in the house. She took care of the yard and upkeep of the home. The power was on. And the water and plumbing worked. Cuccia's identification listed the Charlotte Avenue address as Cuccia's address.

Deputy Hedstrom testified that in his opinion the house looked like someone lived there. He also testified there were functional lights in the house.

Viewing this evidence in the light most favorable to the prosecution, it permits any rational trier of fact to find beyond a reasonable doubt that the Charlotte Avenue home was a dwelling. Accordingly, the evidence was sufficient to convict Browning of residential burglary.

D. INEFFECTIVE ASSISTANCE OF COUNSEL

Browning next contends she was denied effective assistance of counsel because counsel did not object to the admission of her 2010 burglary conviction, which was admitted under ER 609(a)(2). We disagree.

To prove that she received ineffective assistance of counsel, Browning must show that defense counsel's conduct was deficient and that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842, (2018). "Because both prongs must be met, a failure to show either prong will end the inquiry." *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

Defense counsel's representation is deficient if it falls " 'below an objective standard of reasonableness.' " *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "There is a strong presumption that defense counsel's conduct is not deficient." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). Performance is prejudicial if there is reasonable probability that but for the deficiency the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. Where the issue is counsel's failure to bring a motion, the defendant can establish prejudice only if the motion would have been granted and the outcome of the proceeding would have been different. *State v. Price*, 127 Wn. App. 193, 203, 110 P.3d 1171 (2005), *aff'd*, 158 Wn.2d 630, 146 P.3d 1183 (2006).

ER 609 governs the admission of a prior conviction for impeachment purposes. Relevant to this appeal is ER 609(a)(2), which states:

> For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness but only if the crime . . . involved dishonesty or false statement, regardless of the punishment.

A burglary conviction generally qualifies as a crime of dishonesty if the underlying crime the burglar intends to commit is a crime of dishonesty. *State v. Garcia*, 179 Wn.2d 828, 847, 318 P.3d 266 (2014); *State v. Black*, 86 Wn. App. 791, 793, 938 P.2d 362 (1997), *review denied*, 133 Wn.2d 1032 (1998).

Here, the record does not show whether the predicate offenses to Browning's prior burglary conviction was a crime of dishonesty. However, even if we assume deficient performance, Browning cannot show prejudice. Browning had an extensive criminal background. Several theft convictions were introduced to the jury. The jury was instructed to consider the prior conviction only in assessing Browning's credibility. We presume that juries follow the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

Further, even assuming the jury disregarded the trial court's limiting instruction, there is no reasonable possibility that the jury convicted Browning based solely on her 2010 burglary conviction. The State's other evidence overwhelmingly supports Browning's convictions. The record does not support Browning's claim that she received ineffective assistance of counsel.

Browning also appears to argue that defense counsel should have objected because ER 609(a)(2) violates a defendant's due process right to a fair trial under both the state and federal constitutions because it is unfairly prejudicial. Because there is no legal authority holding that ER 609(a)(2) violates the state and federal due process clauses, defense counsel's decision to not object would not be considered deficient performance or prejudicial.

Based on the above, Browning's ineffective assistance of counsel claim fails.

E.       MISCALCULATED OFFENDER SCORE

Lastly, Browning argues in her SAG that the sentencing court miscalculated her offender score. She, however, does not explain how the court miscalculated her offender score. Under RAP 10.10(c), Browning is required to "inform the court of the nature and occurrence of alleged errors." Browning fails to do so. Moreover, she agreed to a 100-month aggravated exceptional sentence as part of a plea deal. Accordingly, we decline to address this issue further.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Melnick, J.